## John H. Dunham

### *v.*

## The Village of Hyde Park.

75 371
136 571
75 371
141 600
75 371
150 96
75 371
180 255

1. STREETS — *expediency of widening is a legislative and not a judicial question.* The municipal authorities of cities and villages are the exclu-

sive judges of the propriety and necessity of the widening or laying out of a street within their corporate limits, and, unless there is manifest injustice, oppression or gross abuse of power in their action, a court of equity will not interfere with the exercise of the discretion vested in them.

2. SAME — *whether bill shows the proposed widening of a street to be for a private use.* An allegation in a bill to enjoin the trustees of a village from taking complainant's land to widen a street, that the trustees, or a majority of them, own a large amount of real estate in the village, and that in taking complainant's land they were acting in pursuance of an illegal, unjust, fraudulent, oppressive and unwarrantable scheme and design to deprive the complainant of his property, on the pretext of public necessity, but, in fact, for the sole purpose of enhancing the value of real estate in the village, thereby enabling them or their relatives and friends to make a more advantageous sale of their property, is not sufficient to show that the proposed widening of the street was merely for a private and not for a public use. The fact that the trustees were influenced in their action, by the consideration of the incidental benefit they expected to their real estate, would not render their action unauthorized and illegal, as the principal purpose was the enhancement of the value of all the real estate in the village by increased accommodation for public travel and transportation.

3. DEMURRER — *how far an admission of the facts pleaded.* A demurrer to a bill in chancery admits all facts which are well pleaded, but does not change the rule of pleading, that the allegations in the bill must be taken most strongly against the complainant.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

Messrs. GOUDY & CHANDLER, and Messrs. HAWES & LAWRENCE, for the appellant.

Messrs. LEAMING & THOMPSON, for the appellees.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was a bill in chancery to enjoin the village of Hyde Park and its trustees from taking a strip of land 17 feet wide from complainant's land, for the purpose of widening 51st street. A preliminary injunction was allowed.

A demurrer to the bill was filed by the defendants, which was sustained, the injunction dissolved, and the bill dismissed. The complainant appealed from the decree.

The bill alleges that the complainant was the owner of 40 acres of land situated in the village of Hyde Park, in Cook county; that he subdivided the land in 1869 into 149 lots, with streets, alleys and a park; that the south tier of lots in the subdivision, 49 in number, are laid out of a uniform depth of 145 feet, and of a uniform width of 25 feet, all fronting north on the park, the south line of the lots being 33 feet north of the center line of 51st street, which street forms the southern boundary of the lots.

That this park is dedicated as a private park, by the name of Madison Avenue Park, for the use of the owners of lots fronting on the same, and is to be used and enjoyed by such owners in common as a private park, and for no other purpose whatever, and it is so noted upon the plat. The bill avers that after the plat was recorded, complainant erected expensive dwelling houses upon eight of the lots, between 51st street and Madison Avenue Park, fronting on the park, and 20 feet from the front line; that these were sold, and agreements made that they should for ever remain 20 feet from the front, and all other houses thereafter built on said lots should front on Madison Avenue Park, and be placed 20 feet from the front line; that at the time of such subdivision and since, 51st street was, and has been, a public highway of the width of 66 feet. The bill then represents that on the 3d of February, 1873, an ordinance was passed by the president and board of trustees of the village of Hyde Park for the widening of 51st street to the width of 100 feet from Grove Parkway, so called, on the west, to Lake Michigan on the east, a distance of about two miles, the expenses and costs to be paid wholly by assessment; that such president, on September 6, 1873, in pursuance of the ordinance, filed, in the name of the village of Hyde Park, a petition in the Superior Court of Cook county for the condemnation of the south 17 feet of the said 49 lots for the purpose of such widening of 51st street; that the street is now wide enough for all purposes of travel or residence; that the pro-

posed widening of it is not a public benefit or necessity; that it would reduce complainant's said lots in depth to 108 feet, and inflict a great injury and damage upon him; and charges that the defendants have instituted and are carrying on such proceeding for the sole purpose of enhancing the value of real estate in the village of Hyde Park, thereby enabling them, or their relatives and friends, to make a more advantageous sale of their property, and prays that the proceeding may be enjoined.

The question presented is as to the sufficiency of the bill, whether upon its face it shows facts entitling complainant to the relief sought.

The power to lay out and widen streets within the village of Hyde Park has been delegated by the legislature to the president and board of trustees of said village. Notwithstanding many of the allegations of the bill are directed to the point that the proposed widening of the street is not called for by any public necessity, appellant's counsel, in their argument, very properly, concede that the municipal authorities of Hyde Park are the exclusive judges of the propriety and necessity of widening the street in question, and that their decision is conclusive upon the courts. The only point made in support of the bill, and in objection to the condemnation proceeding is, that private property is sought to be taken for a private use, and not for public use. It is not claimed, on the other side, that this can be done. The difference is, whether the use is private and not public. Complainant insists there can be no question as to this, that it is foreclosed by the demurrer, and stands admitted that the property is sought to be taken for private use and not for public use; that the bill so alleges, and that the demurrer admits the allegations of the bill. The demurrer does admit all facts which are well pleaded.

The point, then, for determination is reduced to this, whether, by the showing of facts in the bill, it appears that the proposed widening of this street is merely for a private use, and

not for public use. The allegation of the bill in this respect is as follows:

Your orator further represents and shows unto your honors, upon information and belief, that the so-called trustees of the village of Hyde Park, defendants herein, or the majority of them, own a large amount of real estate situated in said town or village, and in consideration of the premises hereinbefore stated, your orator is of the opinion and belief, and he so avers and charges, that the defendants herein, in instituting and carrying on said proceedings for the taking and appropriating of your orator's land as aforesaid, are acting in pursuance of an illegal, unjust, fraudulent, oppressive and unwarrantable scheme, and design to deprive your orator of his property, on the pretext of public necessity, but in fact for the sole purpose of enhancing the value of real estate in the village of Hyde Park, thereby enabling them or their relatives and friends to make a more advantageous sale of their property.

The averment here is, not that the proceedings are for the sole purpose of enhancing the value of the real estate of the trustees, or of their relatives or friends, but that they are for the sole purpose of enhancing the value of real estate in the village of Hyde Park, thereby enabling the trustees or their relatives and friends to make a more advantageous sale of their property. The allegation is to be taken most strongly against the complainant, and must be held to be no more than that the purpose in view is the general enhancement of the value of real estate in the village of Hyde Park, not the enhancement of the real estate of any particular individual, or set of individuals. The incorporated village of Hyde Park appears to embrace a township of land.

The above allegation is preceded by a statement in the bill, of facts going to show that the widening of the street is not demanded by public necessity; as, that the land in the township is nearly all unoccupied; that there is a collection of houses called Hyde Park within the limits of this incorporated village,

which contains less than 100 families; that the street proposed to be widened from 66 to 100 feet, a distance of two miles, runs to this hamlet, and that there is not a house on it, save in this little collection of houses on the lake shore, where there are but four on the street; that there is but little travel on the street, and very little occasion for any; and that there are two streets, eighty feet wide, on each side of this 51st street, and within less than a quarter of a mile from it, which will answer the public demand for a long time to come; that only three of the fourteen petitioners for the widening of the street resided in said village; that a majority of them were large real estate owners, who hold property in the village of Hyde Park for speculative purposes. The undertaking of the widening of this street for the purpose of enhancing the value of real estate in the village of Hyde Park, presupposes the public use of the improvement, or its being deemed such.

The way in which public roads enhance the value of real estate is by affording increased facilities for travel and transportation.

The former results as an incident of the latter. If the widening of this street will be no accommodation of travel, it will not increase the value of real estate in the village, but will tend otherwise, on account of the increased burden of taxation which will be imposed. The gravamen of the bill is, that the actuating purpose of the village authorities is the enhancement of the value of the real estate of the village of Hyde Park, and we can perceive no way in which this is to follow, except by the increased accommodation of travel and transportation upon the street; and must suppose the board of trustees had first determined that such public accommodation would result from the proposed improvement, and that it was through the means of such public accommodation they had concluded that real estate would be benefited. The public accommodation in this way was a legitimate purpose; and, although the authorities were influenced in their action by the consideration of the incidental

effect upon real estate which they expected to result, that would not render their action unauthorized and illegal. The difference between complainant and the board of trustees, must be in regard to the public accommodation: the former denying, and the latter believing, that it will result; and the discretion of the board of trustees honestly exercised, upon that subject, the court cannot review. We may conceive of a case where an individual land owner being shut off from a street, by widening it, so as to bring him upon the street, there may be a special benefit and value conferred upon his land, without there being any increase of the public accommodation.

In such a case, it might be said, that property sought to be taken for such a purpose, was for private and not for public use, although it was the case of the widening of a street. But the bill presents no case of this kind. There is not a single fact set forth tending to show wherein the real estate of any one or more individuals will be likely to be in any way specially benefited or increased in value by the proposed improvement.

The enhancement of the value of real estate is the secret spring of the undertaking of very many works of public improvement, which are a public use in their nature, but such purpose does not take from them the character of public use.

In the recent case of *The Chicago, R. I. & P. R. R. Co.* v. *The Town of Lake*, this court said: "That the taking and appropriating property for a public street or highway by a municipality, is a public use in its nature, cannot be questioned or denied,   *   *   *   and when the use is public, the judiciary cannot inquire into the necessity or propriety of exercising the right of eminent domain; that right is political in its nature and not judicial, and belongs exclusively to the legislative branch of the government, and under our constitution the judiciary have nothing to do with it;" and also in *Curry* v. *Mt. Sterling*, 15 Ill. 320, that the extension of a street was a matter of discretion on the part of the board

48—75TH ILL.

of trustees. The courts cannot review the exercise of that discretion.

We regard the facts set forth in the bill, as but relating to the propriety and necessity of widening the street, which this court cannot inquire into; and that they do not show that the proposed widening of the street is for a private, and not for a public use.

The case of *Carter* v. *Chicago*, 57 Ill. 285, is pressed upon our attention, as an authority to sustain this bill. That was the case of an established street in the city of Chicago, of 56 feet in width, where the city attempted to change its roadway and establish it forty feet wide, leaving on the east side of it a space fourteen feet wide for a sidewalk, and no space for a sidewalk on the west side; the effect of which would have been to deprive the lot owners along the west side of the street of a sidewalk, or to compel them to relinquish to the city, without compensation, their courtyards of twelve feet in width, in front of their respective lots, which had been reserved for the express use of courtyards, in the respective conveyances of the lots; and to effect the latter purpose, was charged as the design of the city. The bill was sustained, as presenting a case of gross abuse of power, and oppression. But the bill before us presents no such case. There may have been a miscalculation of the wants of travel, of the incidental effects in enhancing the value of real estate in the municipality, but we see no such case of manifest injustice, oppression and gross abuse of power, as demands the interposition of a court of equity to restrain its exercise. The cases we regard as essentially unlike.

We are of opinion the demurrer was properly sustained, and the decree will be affirmed.

*Decree affirmed.*