[City Council of Montgomery v. Townsend.]

| 80 | 489 |
| 93 | 532 |
| 80 | 489 |
| 99 | 27 |
| 80 | 489 |
| 101 | 383 |
| 80 | 489 |
| 109 | 228 |

# City Council of Montgomery *v.* Townsend.

*Action for Damages Against Municipal Corporation, Caused by Grading Street and Sidewalk.*

1. *Constitutional provisions regulating the taking of private property for public use by corporations.*—Under constitutional provisions formerly of force in Alabama, private property could not "be taken or applied for public use" by municipal corporations, without making just compensation; and this excluded a liability for consequential injuries, when there was no appropriation of the property itself. But the constitutional provision now of force (Art. XIV, § 7) requires corporations, invested with the power of taking private property for public use, to "make just compensation for the property taken, injured or destroyed by the construction or enlargement of its works, highways, or improvements;" and this new provision should be liberally construed in favor of the citizen.

2. *Same; grading, construction or enlarging of streets and sidewalks.* Under this constitutional provision, while compensation is required for property taken, injured or destroyed in the exercise of the right of eminent domain by a public corporation, the liability is limited to injuries, caused "by the construction or enlargement of its works," etc.; and this neither restricts the liability to the original taking and opening of a street, leaving the corporation at liberty to make subsequent changes by grading at its own will and caprice, nor does it impose a liability for additional compensation on every subsequent change by grading or otherwise. Ordinary and reasonable changes and improvements, due to the natural formation of the surface, or to a safe and convenient way (including sidewalks), are presumed to have been contemplated by the parties at the time of the original taking or dedication, and compensation can not afterwards be claimed for injuries resulting therefrom; but a material change in the street (which also includes the sidewalks), caused by a contingency which could not have been reasonably and fairly foreseen, or made merely because the corporate authorities may judge that the public convenience would be thereby increased, or the general appearance of the streets improved, if injury is thereby caused to the adjoining premises, is a new injury, for which compensation may be claimed.

3. *Same; question for court or jury.*—Whether the cutting down of the sidewalk adjacent to plaintiff's lot, to the level of the street below (about fifteen feet), was a *construction* of the highway within the meaning of the constitutional provision, was a mixed question of law and fact; and the court erred in instructing them that the plaintiff was entitled to recover, if his property was injured, without regard to the circumstances or character of the alteration.

4. *Same; measure of damages.*—If the plaintiff is entitled to recover compensation for the injury to his property, the measure of his damages is the difference in the market value of his lot before and after the sidewalk was cut down; and neither the falling of his brick wall, nor the apprehended undermining of his house by subsequent rains can be considered in estimating the damages.

[City Council of Montgomery v. Townsend.]

APPEAL from the City Court of Montgomery.

Tried before the Hon. THOS. M. ARRINGTON.

This was an action brought by George W. Townsend against the city of Montgomery, suing for damages alleged to have been done his property on the corner of Goldthwaite and Herron streets in said city, by reason of cutting down the sidewalk contiguous thereto. The complaint avers that the defendant dug and cut away the sidewalk adjacent to his abut-ting lot, thereby leaving said lot twenty feet above the street below, cutting off all ingress and egress to and from said lot, thus destroying the value of plaintiff's property. To the complaint defendant demurred, that there was no averment in the complaint that the defendant invaded or trespassed upon the property of the plaintiff, and that the court would take judicial notice that by defendant's charter it had the right to change the grade of sidewalks, to raise and lower them as the public good required. These demurrers being overruled the defendant went to trial upon the plea of "not guilty," and also upon a special plea setting up that for fifty years and more the streets and adjacent sidewalks described in the complaint had been public streets and sidewalks, which the defendant, by its charter, were required to keep in safe repair, and that the grievances complained of were such only as necessarily resulted from the lawful exercise of the authority to grade the sidewalks and streets, which had been prudently and skillfully done by defendant. Evidence was offered by the plaintiff, upon the trial of these issues, to show that by reason of the cutting down of the sidewalks adjacent to his property, the washing of the rain had caused a brick wall forming a fence along the sidewalk, to fall, and that some of the houses on said lot were in danger of being undermined and thrown down from the same cause. To this evidence the defendant objected, on the ground that defendant was not bound to furnish the plaintiff with lateral support for his soil, but the objection was not sustained by the court. The defendant also objected to the evidence offered by the plaintiff to show the difficulty of access and egress to and from his lot, resulting from the lowering of the sidewalks, as set out in his complaint, as the same was not a legal element of damage in the case. There was a verdict for the plaintiff, and the defendant takes this appeal. The opinion states the contentions that arose on the trial, and points out the error committed by the court which operated a reversal of the case.

JONES & FALKNER, and W. S. THORINGTON, for appellant.

THOS. H. WATTS, and W. L. BRAGG, contra.

[City Council of Montgomery v. Townsend.]

CLOPTON, J.—The action is brought by appellee to recover damages for injury caused to his property by cutting down, under the direction of the City Council of Montgomery, the adjacent sidewalk in front thereof. The street on which the lot of plaintiff is situated is within the corporate limits of the city, was dedicated to the public more than half a century ago, and has been continuously used and recognized as a public street. The level of the other part of the street is, and has been for many years, from fifteen to twenty feet lower than the surface of the sidewalk, on which persons entered from the street by ascending a flight of steps. The sidewalk having been for several months in an unsafe condition, and dangerous to passers thereon, the City Council, upon the examination and report of the city engineer, ordered it cut down to the level of the street. The authority of the City Council to cut down the sidewalk, and the duty to do so, if necessary to put it in a safe condition, are not disputed. In the performance of the work, there was no excavation or cutting beyond the width of the street as dedicated and originally constructed, and it is not claimed, that a want of reasonable care and skill is shown. The plaintiff does not controvert the non-liability of the corporation for consequential damages, in the absence of statutory or constitutional provisions, imposing such liability. The contestation arises on the construction of the clause of the constitution requiring municipal corporations to make just compensation for property taken, *injured*, or *destroyed*, for public use.

The preceding constitutions provided: " That private property shall not be taken or applied for public use, unless just compensation be made therefor, nor shall private property be taken for private use, or for the use of corporations other than municipal, without the consent of the owner." The clause of the present constitution, now under consideration, should be construed in the light of the provisions of its predecessors. Under such provisions, as construed by the courts, no liability for compensation accrued, unless there was an appropriation—a taking or invasion—of the particular property. A municipal corporation was not liable to answer, for consequential damages, to the owner of property not taken, when there was no want of reasonable care and skill. Acts done by such corporations, under valid legislative authority, exercising the power of eminent domain, and not directly encroaching upon private property, did not constitute a taking, in the meaning of the constitution, and did not entitle the owner to a right of action, however much its value and use may have been impaired. The value of adjoining property might be seriously depreciated and even destroyed without right of compensation, because unac-

companied by actual, direct, physical interference.  In such case, the protection of private property was sacrificed to the good or convenience of the community; and the individual loss or injury was regarded *damnum absque injuria*, to be borne by the citizen for the public benefit.

The practical operation of such general provisions having demonstrated, that compensation *only* for property taken or applied was ineffectual to protect the citizen against oppression and injustice, by reason of the abuse of the privilege, with which corporations had been invested, in disregard of the interests and rights of the individuals, the tendency is in revising the several State constitutions, to abrogate by the organic law, a rule, which has no foundation in natural justice, and rests on no sound principle of just government, or of equal administration of powers.  Influenced by these considerations, the framers of the present constitution, not only incorporated the general provision of the preceding constitution, but also an additional and special provision, having reference to municipal and other corporations and individuals invested with the privilege of taking private property for public use.  Section 7 of article 14 of the constitution declares: "Municipal and other corporations and individuals invested with the privilege of taking private property for public use, shall make just compensation for the property taken, injured, or destroyed by the construction or enlargement of its works, highways, or improvements, which compensation shall be paid before such taking, injury, or destruction.  The General Assembly is hereby prohibited from depriving any person of an appeal from any preliminary assessment of damages made by viewers or otherwise; and the amount of such damages in all cases of appeal shall, on demand of either party, be determined by a jury according to law."  This mandatory clause being a new provision—an extension for the protection of property—introduced into a revised constitution, should be liberally construed in favor of the citizen, and so as to secure the purposes intended, as ascertained from the considerations which produced its introduction. It operates a further limitation on the right of eminent domain, from which the State alone is excepted, and establishes a new rule, supported by better reason, and founded in equal justice.  The words, *injured or destroyed*, were not used in vain and without meaning.  It was intended that they should have effect, and unless they operate to impose a liability not previously existing, they are without operation.  The new rule proclaimed by the constitution imposes a liability for private property *injured or destroyed*, though not taken—a liability for consequential damages, from which municipal corporations were theretofore exempt.  The construction has been placed

[City Council of Montgomery v. Townsend.]

on a corresponding clause of the constitution of Pennsylvania, by the Supreme Court of that State, of which ours is a copy. *Redding v. Atthouse*, 93 Penn. St. 400.

A material question is, in what cases and under what circumstances does the constitution impose the new and additional liability ? In this connection our consideration has been cited to the decisions of the courts of several of the States, as sustaining plaintiff's contention, that a municipal corporation is liable for the injury done to an abutting lot by any grading of an established street. By these decisions, it is substantially held, that the recent constitution made no difference as to the form of the public use, and that an abutter is entitled to recover the consequential damages caused to his property by raising or lowering the grade of a street.— *City of Elgin v. Eaton*, 83 Ill. 335 ; *Reardon v. San Francisco*, 66 Cal. 492 ; *Hannon v. Omaha*, 17 Neb. 548 ; *Atlanta v. Greene, Johnson v. Parkersburg*, 16 W. Va. 403. It should be remarked, however, that in the subsequent-case of *Rigney v. Chicago*, 102 Ill. 64, where the same question came again before that court for consideration, three of the seven justices dissented, and the Chief Justice, who concurred in the conclusion, qualified the rule in a separate opinion. The provision in the constitution of each of these several States is general and unrestricted ; "private property *shall not be taken or damaged for public use*," without compensation. The presumption is reasonable, that the convention, which framed the constitution, compared and considered the recent constitutions of other States. And it is significant, in view of the well settled rule respecting the liability of municipal corporations for damages done to adjoining lots not encroached upon, by changing the grade of the streets, or making other alterations, that the convention failed to ordain a provision general and unlimited, as provided in some of the constitutions, operating to abrogate *in toto* the previously settled rule, and adopted the qualified provision of the constitution of Pennsylvania, as sufficient to meet the requisite protection of private property, and at the same time, to answer the demands of public policy and public needs, on which is rested the right of eminent domain. In this there was a manifest intent ; which has reference to the form of the public use—the restriction of the liability of two specified cases ; "*the construction or enlargement of its works, highways, or improvements.*" Unless the injury or destruction is produced by a construction or enlargement of some work, highway, or improvement, which is a consequence of the use of the privilege of taking private property for public use, no liability for damages arises, under the constitution.

The next inquiry is, what is, in the meaning of the constitu-

tion, a construction or enlargement of a highway? The purposes intended are, as ascertained from all the provisions of the section, to limit and qualify the right of eminent domain, making such limitation and qualification equally operative as to all corporations and individuals invested with the privilege. The section contemplates, that the General Assembly shall provide appropriate proceedings for the pre-ascertainment of the damages, protects the right of appeal from the preliminary assessment, and of having the damages assessed by a jury, and requires that the compensation shall be paid before such taking, injury, or destruction,—provisions only applicable and appropriate in case of a resort to the right of eminent domain. In all other cases, the liability of the municipal corporation remains dependent on common law rules, or statutory provisions.—*Edmundson v. Pittsburg*, 23 Amer. & Eng. R. R. Cas. 423. Having reference to the subject with which the convention was dealing, there are three interpretations open—to restrict the construction of a highway to its primary meaning, excluding subsequent alterations; or to extend it and include *all* alterations without reference to the primary construction; or only to a class of changes which may be regarded as separate and distinct uses of the right of eminent domain, as distinguished from the first taking or injury. We think that the last meets most fully the purposes of the constitution.

In laying out a town or city into lots, streets are absolutely necessary as a means of access, without which approach and enjoyment are denied to the lot-owner. They are equally necessary to its growth and development, to its trade, and the various uses and purposes, for which towns and cities are laid out and built. Land-owners, in laying out their lands preparatory to a sale of lots, withhold from sale certain parts at convenient intervals, and set them apart as streets and highways, to be kept open for the public through all coming time, as inducements to the purchase of lots; and the seller derives his compensation from the enhanced value and market price thereby imparted to the lots proper. Although there are no words of grant as to this appendent privilege, the sale of the lots, with the proclaimed attingent streets, is a complete dedication to the use of the lot-holder and the public as highways; as much so as if a deed were executed conveying the easement, or as if they had been condemned to public use under the power of eminent domain. The dedication is not restricted to the use of the street in its natural state; but is a surrender of its use to the public, as a thoroughfare—safe and convenient way for travel and transportation, extending the entire width including the sidewalks. As a rule, change of surface is essential to the proper enjoyment of this privilege, and dedication carries with it this right

[City Council of Montgomery v. Townsend.]

of change.   Though the land-owner retains the ultimate fee, his right of property is subservient to the use and enjoyment of the easement by the public; and to the reasonable exercise of the authority of the municipal government to prepare and adapt it, and to make necessary improvements to continue its adaption, to the public convenience and safety.   Authority to make all needed excavations or embankments or alterations, to render the street safe and convenient, is implied in the dedication, which follows the co-terminous soil, into whosesoever hands it may pass.   The anticipated size of the town or city, its probable commercial importance, and the proximity of the pass-way to public or business centres, are factors, which should enter into the computation; for all these must be presumed to have been had in view, when the dedication was made.

It is not the intent and operation of the constitution to infringe the existing rule as to the liability of the city for grading, altering, or improving the streets, farther than is essential to the protection of private property, and the equal distribution of the public burdens.   Where land has been dedicated to the public for use as a street, the rule as to the liability of the municipality for subsequent alterations is the same, under the constitution, as if the land had been condemned under the right of eminent domain.   In case of condemnation, the constitution does not operate to so restrain the power of municipal corporations over the streets, as to subject them, on each successive alteration and improvement, to liability for damages, when the same could legally, and should have been assessed on the first taking or injury of the property.   A double liability is not intended, and unless all ascertainable damages are, or presumed to be assessed at once, the corporation might be made liable to a double recovery for the same injury. This rule exempts from liability for damages, arising from ordinary and reasonable changes and improvements, which may be due to the natural formation of the surface, or to the increasing wants of the public,—which injuries were capable of being foreseen and ascertained, could and ought to have been naturally anticipated, and are presumed to have been considered and included in the original assessment of compensation. Such changes or improvements are the natural and probable consequences of the uses and purposes for which the land was originally taken, and compensation then awarded; or in case of dedication, for which the owner received consideration in the resultant advantages.— *Denver v. Bayer*, 2 Amer. & Eng. Cor. Cas. 465; *L. & Y. Ry. Co. v. Evans*, 16 Beav. 322; *Lawrence v. Gt. No. Ry. Co.*, 16 Q. B. 643.

But the right of the municipal authorities to change the grade of a street, or alter it in other respects, is not unlimited,

[City Council of Montgomery v. Townsend.]

nor to be exercised capriciously. It is bounded by the nature of the use, for which the property was dedicated or condemned, and the necessities of a safe and convenient way, having reference to the wants of the community. To limit *construction of its highways*, as employed in the constitution, strictly to its *primary* signification, would exclude cases which come within its spirit, and defeat the particular intent, that compensation shall be made for every injury to private property for public use, in the forms specified ; cases which came within the mischief and the constitutional remedy. The dividing line lies between what is necessary to safe and convenient use on the one hand, and what is in excess thereof and not essential thereto, or mere ornamentation on the other. Under this rule, the constitution requires compensation to be made for the extraordinary changes, which may not be due to the natural formation of the surface, nor to the mode of original construction, as then deemed sufficient to a safe and convenient way. A material change, operating injury to adjoining premises, occasioned by a contingency, which could not have been reasonably and fairly foreseen, or made merely because the corporate authorities may judge that the public convenience would be increased thereby, or the general appearance of the street improved, is a new description of injury, in the enlarged sense of the constitution, which casts on the property owner an additional burden, entitling him to compensation. Injuries by the construction of a highway, as provided for in the constitution, include those injuries produced by alterations, which could not have been naturally and reasonably anticipated, and damages for which could not have been legally awarded in the preliminary assessment, if the land is condemned, or if dedicated, which the owner would not be estopped to claim. This construction effectuates the cardinal purposes of the constitution—the protection of private property, and the equal distribution of the public burdens—avoids double compensation ; and is applicable alike to all corporations, municipal and other, and individuals invested with the privilege of taking private property for public use. We are aware that we have left a wide margin for diversified opinion ; but we can not lay down a more definite general rule applicable to all cases, where each case is dependent on its special facts and circumstances; as definite, however, as the rule which defines the prospective injuries, for which compensation may be recovered on condemnation of the land for public use. It applies when the municipal corporation is not the owner of the fee. If such owner, other rules may govern.

It follows, that whether the lowering of the sidewalk to the level of the street is a construction of the highway is a mixed

[Gardner, as Adm'r, v. Kelso et al.]

question of law and fact. The court erred in not submitting the ascertainment of the facts to the jury, and in instructing them, that the plaintiff is entitled to recover if his property was injured, without regard to the circumstances or the character of the alteration.

If the plaintiff is entitled to compensation, the measure of damages is the difference between the market value of the lot before and after the lowering the sidewalk,—the diminution in value produced thereby. The falling of the brick fence, and the apprehended undermining of the house, caused by subsequent rains, are damages caused by the intervention of an independent agency, not put in operation by the act of the defendant, and too remote to be considered elements of damages.

Reversed and remanded.