# City Council of Montgomery *v.* Townsend.

*Action for Damages against Municipal Corporation resulting from Grading Sidewalk and Street.*

1. *Grading streets and sidewalks in city or town.*—When a street in a city or town, including the sidewalk as a part thereof, is acquired by dedication, or by condemnation proceedings, the municipality has authority to change the grade or surface, either by cutting down or elevating it, from time to time, as may be deemed necessary or proper to render it useful, convenient and safe as a public thoroughfare; and in the absence of constitutional or statutory provisions, if the work is done in a careful and a skillful manner, no liability is incurred by the corporation for incidental or consequential injuries to adjacent property.

2. *Same; under constitutional provisions*—Under the constitutional provision which requires corporations to make just compensation for property taken, injured or destroyed by the construction or enlargement of their works, highways or improvements (Art XIV, § 7), a liability is imposed for injuries caused to adjacent property by a change in the grade or surface of a street or sidewalk, when it goes beyond the extent and purpose of the original taking or dedication—that is, when it is made for ornamentation, or to improve the general appearance of the street, or for an increase of convenience beyond the ordinary standard; and this is, in most cases at least, a mixed question of law and fact.

3. *Same; Measure of damages.*—In an action against a corporation to recover damages for such injuries only the injuries resulting directly from the construction itself, and not subsequent injuries or annoyances resulting consequentially, can be estimated.

4. *Sufficiency of complaint.*—If the complaint alleges that the defendant corporation "wantonly, wrongfully and illegally cut down the

[City Council of Montgomery v. Townsend.]

sidewalks adjoining plaintiff's said lot, so as to injure and destroy the value of said property," it is not necessary to aver with greater particularity that the act complained of was in excess of the lawful authority of the corporation.

5. *Argumentative charge.*—It is not error to refuse an argumentative charge liable to confuse.

APPEAL from City Court of Montgomery.

Tried before Hon. THOMAS M. ARRINGTON.

The plaintiff Townsend brought this action against the City Council of Montgomery, claiming damages for the injury done his property on the corner of Goldthwaite and Herron streets in said city of Montgomery, by reason of the grading and cutting down of the sidewalks contiguous thereto by the defendant. The defendant dug and cut away the sidewalks attingent to plaintiff's property thereby leaving his premises about twenty feet above the contiguous streets. The sidewalks, before the grading in question, were from eighteen to four feet above the adjacent streets, and had been so for many years. The streets had been dedicated for public use to the city, and had been so used, for fifty years continuously. There was verdict and judgment for plaintiff for one thousand dollars. The errors assigned (on appeal by defendant), to the overruling of the original and supplemental demurrers sufficiently appear in the opinion. Charges 1, 2 and 3, requested by defendant and refused by the court, are here given:

1. "Under the evidence in this case the jury must find for the defendant."

2. "The evidence in this case does not show any such construction or enlargement of the works, highways or improvements of defendant as makes defendant liable in this case, even if plaintiff was injured thereby, if there was no invasion or trespass upon plaintiff's property."

3. "Under the evidence in this case the streets adjacent to plaintiff's property were dedicated as streets and used as such by the public for more than fifty years before the cutting down of the sidewalks. By this dedication there was no restriction to their use in their natural state, but was a surrender of their use as a thoroughfare as a safe and convenient way for travel and transportation, extending the entire width of the street, and although the land owner retains the ultimate fee, his right of property is subservient to the use and enjoyment of the easement by the public and to the reasonable exercise of the authority of the city council to prepare and adapt it, and to make necessary improvements

[City Council of Montgomery v. Townsend.]

to continue its adaptation to the public convenience and safety; and if the jury believe from the evidence that in cutting down the sidewalks adjacent to plaintiff's property the defendant did nothing more than was necessary to continue the adaptation of said streets and sidewalks to the public safety and convenience, then they must find for the defendant."

JONES & FALKNER and W. S. THORINGTON, for appellant. (No brief on file.)

WATTS & SON, *contra.*—Where there are several counts in a complaint and a demurrer is to the complaint, and there be any *one good* count, the demurrer must be overruled. *Weems v. Weems,* 69 Ala. 104, and cases cited; 3 Brick. Dig. 705, § 68. The statutes and constitution giving the citizen compensation for injury or destruction of his property must be liberally construed in his favor.—3 Baxter (Tenn.) 338; Cooley Const. Lim. (4th Ed.) 676. Where the city council invades private property, the presumption is against it, and if it has the right, such right is matter of defense.—2 Dillon on Munic. Corp. § 605; 38 Ala. 156; 3 Baxter, *supra.* The main question in the case was settled in *City Council v. Townsend,* 80 Ala. 489.

STONE, C. J.—When this cause was before us at a former term—80 Ala. 489—we considered very fully the import and extent of section 7, Art. 14 of the Constitution of 1875, which reads as follows:

"Municipal and other corporations and individuals invested with the privilege of taking private property for public use, shall make just compensation for the property taken, injured or destroyed by the construction or enlargement of its works, highways or improvements," &c.

We defined the extent and operation of the new provisions said amendment had brought into our constitution, and we do not question the correctness of the interpretation we then agreed on and announced. We held that the cutting down of the sidewalk in the manner shown by all the testimony in the case might come within the purview of the word "construction," as employed in our constitution; and that the removal of the lateral support, with the facility of access to plaintiff's lot, which the embankment had furnished, though not an interference with the plaintiff's land proper, might yet work such a present "injury" to his freehold as to enti-

[City Council of Montgomery v. Townsend.]

tle him to damages therefor. We fortified our ruling by many adjudged cases on similar constitutional provisions, to which we may add *Pennsylvania R. R. Co. v. Marchant*, 27 Law Register (3 Ser. Vol. 1) 381, a decision rendered since our former ruling in this case, reviewing and reaffirming former adjudications. We did not affirm that the principles stated were mere legal conclusions. We held the contrary, and reversed the City Court's ruling, which stated them as matters of law. We held it was a mixed question of law and fact. In other words, a question for the jury to determine, under certain rules of law to be given them in charge.

Public streets are acquired by grant or dedication, or by condemnation; and the rules governing their improvement and use are substantially the same, no matter how acquired. The municipality is not restricted in its use to the soil in its natural state. Its surrender is to the public as a thoroughfare—a safe and convenient way for travel and transportation. And this is coextensive with the width of the street including the sidewalks. In opening streets change of surface is usually necessary, to adapt them to the uses for which they are laid out. It is rarely, if ever, the case, that the surface of the soil, in its natural state, meets the requirements of street service. And the size and prospective growth of the town must be taken into the account; while even in the same town, proximity to or remoteness from commercial centers and business wants, must not be overlooked. In the grant, dedication, or condemnation of parts of the ground plat for the use of streets, all these wants and consequences are presumed to be in contemplation, and the necessary power to carry them into effect follows the dedication or condemnation. It is a power to so change or improve the grade and natural surface of the street, as to make it useful, convenient and safe for the amount and nature of travel and commerce, of which the street is likely to become the highway, or thoroughfare. And this right to change and improve is not exhausted with one act of improvement. It extends through all time. And, as we have said, this power is as effectually conferred on the municipality, as if it were expressed in the grant or dedication, or expressly prayed for and granted in the condemnation proceedings. Persons who obtain title to lots abutting on such streets, whether original or subsequent purchasers, are charged with notice of such power, and can not complain of its exercise. "Authority to

make all needed excavations or embankments or alterations, to render the street safe and convenient, is implied in the dedication which follows the co-terminous soil, into whosoever hands it may pass."

But this power is not without limit. "A material change, operating injury to adjoining premises, occasioned by a contingency which could not have been reasonably and fairly foreseen, or, made merely because the corporate authorities may judge that the ·public convenience would be increased thereby, or the general appearance of the street improved, is a new description of injury in the enlarged sense of the constitution, which casts on the property owner an additional burden, entitling him to compensation." It is not every change operating an increase of convenience, which falls within this rule. Changes generally have for their object increase of convenience. This power may be exercised completely at one time, or, on several occasions, as circumstances may suggest; and it authorizes the municipality to so alter the grade or surface of the streets, as to make them useful, convenient and safe for travel and transportation, as the same may be likely to be in request generally, or on the particular street. To come within the clause of the constitution we are discussing, the change, alteration or improvement must go beyond this. It must be the result of a contingency not likely to be foreseen, or anticipated, or, must be an increase of convenience above the ordinary standard of "useful, convenient and safe," or, must be made for ornamentation or for the purpose of improving the general appearance of the street.

We have thus attempted to define, as well as we can, the two classes of street alteration or improvement. The power to make such as fall within the one class, is conclusively presumed to have been conferred by the act of dedication, or by the judgment of condemnation. In fact, it is so generally conferred, that it may almost be said to be inherent in municipal organization. For the proper exercise of this power, the attingent property holder, though injured, is without redress. For injury suffered from the other, he is entitled to compensation under the new provision of our constitution of 1875. But whether the case falls within the one class or the other, must depend on so many phases and shadings of fact, that it can rarely, if ever, become a question of law. Larger license must be allowed in a city than in a village, in a commercial center and crowded thoroughfare, than in an obscure

off-street. Hence, it is a mixed question of law and fact, to be pronounced on by a jury under proper instructions.

Another question may become important in cases of this kind. Are the damages recoverable in a suit like this, confined to the injury which results directly from the construction itself, or, can later injuries or annoyances which result consequentially be the subject of a recovery? We hold that the first of these propositions is the true one. We adopt as sound the following language of the Supreme Court of Pennsylvania in *Penn. R. R. Co. v. Marchant, supra:*

"It is very plain to our view, that the constitutional provision was only intended to apply to such injuries as are capable of being ascertained at the time the works are being constructed or enlarged, for the reason, among others, that it requires payment to be made therefor, or security to be given in advance. This is only possible where the injury is the result of the construction or improvement."

No question can arise in this case on the power and duty of the city government to keep the streets in proper repair for the uses to which they were dedicated. In the act incorporating the city, approved December 23, 1837, it was enacted that "the mayor and aldermen in council assembled shall have power and authority to pass by-laws and ordinances necessary and proper . . . to make, alter and ascertain new streets and alleys; to clean and keep in repair the streets and alleys." The amendatory act, approved February 13, 1879 (Sess. Acts, 370), retained this power in the city council, almost without change of language.

Since the doing of the act, which is complained of as a grievance in this case, the act to amend the charter of the city of Montgomery was passed. It was approved February 26, 1887 (Sess. Acts, 483). That act can not affect this case. The older statutes, however, conferred on the city government power to do all the acts in reference to the streets and sidewalks we have enumerated above. To them was confided the discretion and final arbitrament of determining the grades, embankments and excavations necessary to make the streets safe and convenient, with the single limitation, that since the constitution of 1875 went into effect, they can not go beyond what may reasonably be supposed to have been had in contemplation, or what was necessary to make the streets safe and convenient, without making compensation to the abutting landed proprietor, for the injury done to his property. And this judgment and discretion in reference to

the streets and sidewalks, their change of grade and improvement with a view to their usefulness, safety and convenience, was and is restricted to no narrow boundaries. Purchasers of property fronting on streets are conclusively presumed to know, and give their assent that necessary changes in grade and surface may be made, and may be changed from time to time, as probable growth of the city or town may reasonably be supposed to have been anticipated. We subjoin the authorities sustaining the views we have expressed, without collating or commenting on them: 2 Dill. on Munic. Corp. (3d Ed.) § 686; *Hovey v. Mayo*, 43 Me. 322; *Callender v. Marsh*, 1 Pick. 418; *Brown v. City of Lowell*, 8 Metc. 172; *In re Furman Street*, 17 Wend. 649; *Plum v. Morris Canal & B. Co.*, 2 Stockt. 256; *Gall v. City of Cin.*, 18 Ohio St. 563; *City of Lafayette v. Bush*, 19 Ind. 326; *Dunham v. Hyde Park*, 75 Ill. 371; *City of St. Louis v. Gurno*, 12 Mo. 414; *Taylor v. City of St. Louis*, 14 Mo. 20; *Schattner v. Kansas City*, 53 Mo. 162; *McCormack v. Patchin*, 14 Amer. Rep. 440, and note; *Creal v. City of Keokuk*, 4 Greene (Iowa), 47; *Karst v. St. Paul, S. & T. F. R. R. Co.*, 22 Min. 118; *Dewit v. Duncan*, 46 Cal. 342; *Humes v. Mayor of Knoxville*, 1 Hump. 403; *Markham v. Mayor & Council of Athens*, 23 Ga. 402.

There are cases which hold that municipal corporations may subject themselves to damages at the suit of adjacent property holders, for injury inflicted in grading and improving streets; but the cause of action is not the act done, but the unskillful, careless, or reckless manner in which it is done.—*Hooker v. N. H. & Northampton Co.*, 14 Conn. 146; *State, Fiacre et al. v. Jersey City*, 34 N. J. Law, 277; *Louisville v. Rolling Mill Co.*, 3 Bush. Ky. 416; *City of Delphi v. Evans*, 36 Ind. 90; s. c., 10 Amer Rep. 12 and note; *City of Aurora v. Reed*, 57 Ill. 29; *Goodall v. Milwaukee*, 5 Wis. 32, and note; *Mayor v. Nichols*, 3 Jere Baxter, 338; *Oakley v. Trustees*, 6 Paige, 262. The general rule, however, is, that in the absence of constitutional and statutory provision on the subject, cities are not liable for incidental or consequential injuries done to property by the change of grade, or other alteration of streets, made by the direction of the city authorities.—*New Haven v. Sargent*, 38 Conn. 50; s. c., 9 Amer. Rep. 360; *Green v. Reading*, 9 Watts, 382; *Mayor v. Randolph*, 4 Watts & S. 514; *O'Conner v. Pittsburgh*, 18 Penn. St. 187; *Hoffman v. St. Louis*, 13 Mo. 651; *Imler v. Springfield*, 55 Mo. 119; *Macy v. City of Indianapolis*,

[City Council of Montgomery v. Townsend.]

17 Ind. 267; *Nebraska City v. Lampkin*, 6 Neb. (Brown) 27.

We have shown above that under the laws of its incorporation the city of Montgomery, through its authorized agents, has the management and control, construction and repair of its streets and sidewalks. That authority was conferred by a general law, of which the courts take judicial notice. We have shown further that under such general authority, and the implications which attend the dedication or condemnation of ways for public streets, very large discretion is confided to the city government in the matter of grading, lowering, or elevating the surface, so as to render streets safe, suitable and convenient for the public. We have shown that the changes of surface and grade necessary to bring about this result, must be supposed to have been had in contemplation when the dedication was made, and hence this right of change was conferred as part of the dedication. The amendment of the constitution, however, introduces a new restraint, theretofore unknown, that any change or improvement not necessary for public safety and convenience, but introduced for purposes of ornamentation, or for an object foreign to the original purpose of the dedication, must be regarded as not within the contemplation when the dedication was made, and hence, that no power exists to make such change or improvement, without a new dedication or condemnation, or, without incurring a liability for the injury done. It is not the elevation or depression of grade which necessarily and *per se*, does the wrong. It is only such elevation or depression as is not necessary to the safety and convenience of the street as a highway; only such elevation or depression as extends beyond the requirements of public safety and public convenience, and embraces the ornamental, the fanciful, the novel; such change, as is not supposed to have been had in contemplation, when the right was acquired. In *Smith v. Corporation of Washington*, 20 How. U. S. 135, is this language: "It has been contended that this power, 'to open and keep in repair,' does not include the power to alter the grade or change the level of the land on which the streets by the plan of the city, are laid out. But we think such a construction of this clause of the charter is entirely too narrow, and can not be supported as consonant either with the letter or spirit of the statute. It is the evident intention and policy of this statute to commit to this corporation, as a municipal organ of government, whose members are chosen by the citizens, the care, super-

vision and general regulation of the streets as in other cities and boroughs. . . . . . . . Streets can not be opened and kept in repair, or made safe and convenient for public use, without being made level, or as nearly so as the nature of the ground will permit. Hills must be cut down, hollows filled up, or, in other words, the road must be '*graded*' or, 'reduced to a certain degree of ascent or descent;' which is the proper definition of the verb 'to grade.' If the duty imposed on the corporation requires this to be done, the power must be co-extensive with the duty. If charged with neglect of their duty, as public officers bound to keep the streets in repair, it would not be a sufficient excuse to allege that the fences and obstructions are removed, and therefore the street is 'opened,' or that it has been kept in as good repair, as it was found. . · . . . . Nor could the allegation be admitted, that having once fixed a grade, which is now found improper and insufficient, the corporation has exhausted its power, and has no authority to change the level or grade, in order to keep the street in repair. As the duty is a continuing one, so is the power necessary to perform it."

When this case was before us at a former term, the record disclosed that separate demurrers had been interposed to the three several counts of the complaint. Each of these demurrers assigned causes. The demurrers had been overruled in the trial court, and not being insisted on in the aspect here considered, they were not ruled on here. We will not now consider them.

After the reversal and remandment, a supplemental demurrer was filed to the three counts collectively, which was also overruled. No authorities have been cited in support of this supplemental demurrer. The second count of the complaint avers that the "defendant, by its agents and employes, disregarding the rights of the plaintiff, wantonly, wrongfully and illegally cut down the sidewalks adjoining said lot, so as to injure and destroy the value of said property," &c. The first count charges the same acts as a trespass on the property itself.

A plausible argument can be made in support of this demurrer, based on the admitted power of the city over street improvements. It will be remembered, that it was both the privilege and duty of the city government to so grade the streets, or change their grade as to make them safe and convenient, and that this power is conclusively presumed to have been conferred when the dedication was made. The

[Frazer & Co. v. Western Union Telegraph Co.]

city violates the law only when it makes embankments, excavations or other alterations in excess of the rule and purpose of safety and convenience. The argument is, that to put this city in fault, the excess should be averred. An examination of the reported cases will not support this view, while our own liberal rules of pleading do not exact so great strictness.—*L. & N. R. R. Co. v. Jones*, 83 Ala. 376. The City Court did not err in overruling the supplemental demurrer.

Charges 1 and 2, asked by defendant are in palpable conflict with our rulings when the case was formerly before us, which rulings are reaffirmed above. There was no error in refusing them. Charge 3 is an argument, liable to confuse, and rightly refused on that account, if no other.

Affirmed.