# City Council of Montgomery *v.* Maddox.

*Action for Damages against Municipal Corporation.*

1. *Taking or injuring private property for public use; grading streets or side-walks.*—As to the liability of a municipal corporation, under the constitutional provisions now of force (Art. xiv, § 7), for injuries caused to property abutting on a street by cutting the side-walk down to the same level, STONE, C. J., and CLOPTON, J., adhere to the rule declared in *Townsend's Case* (80 Ala. 489; 84 Ala. 478), while SOMERVILLE and McCLELLAN, J J., extend the rule to all cases of injury caused by grading or cutting down streets or side-walks, without re-gard to the original dedication or condemnation, or to damages paid on former occasions; the measure of damages in every case being the difference in the market value of the property before and after grading.

APPEAL from the City Court of Montgomery.

Tried before the Hon. THOS. M. ARRINGTON.

This action was brought by Thomas B. Maddox against the City Council of Montgomery, to recover damages for injuries to his property caused by cutting down the adjacent

| 89 | 181 |
| 99 | 27 |

| 89 | 181 |
| 101 | 383 |

| 89 | 181 |
| 109 | 228 |

| 89 | 181 |
| 134 | 228 |

[City Council of Montgomery v. Maddox.]

side-walk to the level of the street; and was commenced on the 26th February, 1886. The plaintiff's property was situated on Herron street, and in the same square with the property of George W. Townsend; the injury to each being of the same character, and differing only in extent. The errors assigned are based on charges given by the court at the instance of the plaintiff, and the refusal of several charges asked by the defendant.

JONES & FALKNER, and W. S. THORINGTON, for appellant.

THOS. H. WATTS, *contra.*

SOMERVILLE, J.—The action is one entirely analogous to that presented in *City Council of Montgomery v. Townsend*, 80 Ala. 489; s. c., 84 Ala. 478, which was before this court twice on appeal. The plaintiff in the suit claims damages for the injury done his property on Herron street in the city of Montgomery, by reason of the grading and cutting down of the street and side-walk contiguous to the property, which is alleged and proved to have been done by authority of the City Council. The side-walk was from ten to fifteen feet above the altitude of the street, and was cut down to the level of the street grade; but no excavation was made beyond the width of the highway as originally dedicated more than fifty years ago. The defendant justified under its alleged power to grade the street and side-walks, and its duty to keep them in repair, so as to make them safe for the passage of pedestrians and vehicles. It can scarcely be denied, that the plaintiff's property has been injured or damaged by the change of the street grade, rendering it less accessible, less desirable as a place of residence, and appreciably diminishing its market value. The verdict of the jury in favor of the plaintiff, for something over the sum of $630, is conclusive on this point.

The only inquiry, as it seems to me, is whether the defendant municipality is to bear this loss; or, if not, to what extent it is to be relieved of the burden, necessarily at the expense of the plaintiff.

This question has been ably considered in the opinions of Chief Justice STONE and of Mr. Justice CLOPTON, in the case of Townsend, to which I have above alluded. With much in those opinions I fully agree, but, upon a more mature consideration of the authorities, I feel impelled to

hold a modified view as to one or more of the conclusions there announced.

We are all agreed as to the old, or common-law rule, which prevailed in this State prior to the Constitution of 1875, as to the liability of municipalities for grading and improving streets. Where they were invested with the authority to make such improvements, and did not exceed such authority, and there was no actual *taking* of the plaintiff's property in the exercise of the right of eminent domain, cities and towns were not liable for what are termed *consequential* damages, unless there was some negligence, or want of skill, in the execution of the work. Or, as stated by Mr. Freeman, in his note to the case of *Perry v. City of Worcester*, 66 Amer. Dec. 437, "Where the act is done by a city under authority of a valid statute or charter, it is not liable for consequential damages to persons or property necessarily incidental to the work performed, unless the action is given by the statute, even when the same act, if done without legislative authority, would have been actionable. But the act must be performed with reasonable care, and without want of reasonable skill." This view is announced in the case of *Townsend, supra*, 80 Ala. 491, and is well supported by the authorities. The reason is, that the owner of the property must ordinarily be presumed to hold it subject to the paramount public right, and to the contingency of a diminution in value resulting from the exercise of the municipal right to improve the streets for the public good, "in any manner which shall not deprive him of property, nor disturb him in the lawful use of anything which should of right be his." As said by Robertson, C. J., 4 Dana, 154; s. c., 29 Amer. Dec. 395: "It would have been *damnum absque injuria*— loss, not injury—inconvenience, not wrong—to which every citizen must submit, and to something like which every citizen does submit, for the public good." The State held its highways in trust for the public use. It had the right to improve them, or to authorize their improvement through the agency of its municipalities, although such action for the public benefit might result in injury to the private property of the citizen. The prerogative of the State was to exempt itself from such actions for damages consequential to the injury inflicted, and it was conceived proper, in the light of former experiences, that the same prerogative should be extended to its municipal agents employed to accomplish the same end.—*Transportation Co. v. Chicago*, 99 U. S. 635.

This was a severe rule, full of hardships and injustice—that an act done under lawful authority, if done in a proper manner, would not subject the party doing it to an action whatever the consequences might be, in the absence of any actual taking of the property of the injured party. It opened wide the door for the most monstrous invasions of the rights of the private property of the citizen, under the authority conferred by legislatures on corporations, especially munici-. pal and railroad. The jurisprudence of every State in the Union furnishes unrighteous illustrations of private property injured by the construction of railroads, and damaged by municipal improvements made at the expense of the citizen for the public good.—*Radcliff v. Mayor &c. Brooklyn,* 4 N. Y. 195; 53 Amer. Dec. 357; *Murphy v. Chicago,* 29 Ill. 279; 81 Amer. Dec. 307; *Nevins v. City of Peoria,* 41 Ill. 502; 89 Amer. Dec. 392; *Mayor &c. v. Orenberg,* 28 Ga. 46; 73 Amer. Dec. 748; Mills on Eminent Domain (2d Ed.), §§ 204, 204a; 2 Beach Law Railways, § 825; *Penn. R. R. Co. v. Marchant,* 119 Penn. St. 541; s. c., 33 Amer. & Eng. R. R. Cases, 116; *Transportation Co. v. Chicago,* 99 U. S. 635.

There are two notable cases in the State of Pennsylvania, which well illustrate the common-law rule above announced. As it seems to be conceded that the hardship of these cases—the want of a remedy for an admitted mischief—led to the incorporation in the Pennsylvania Constitution of 1874 of a provision of which section 7 of Art. XIV of our present Constitution (of 1875), hereafter quoted, is an exact copy, I deem a particular reference to these decisions to be appropriate. In *O'Connor v. Pittsburg,* 18 Penn. St. 187, decided in 1851, the cutting down by the city of Pittsburg of the grade of a street rendered entirely useless a church building, which was shown to have cost about $25,000, and practically destroyed its value as a place of worship. "The loss to the congregation," said the court, "is a total one, while the gain to holders of property in the neighborhood is immense. The legislature that incorporated the city never dreamt that it was laying the foundation of such injustice; but, as the charter stands, it is unavoidable." It was stated by Chief-Justice Gibson, that the case was re-argued, "in order to discover, if possible, some way to relieve the plaintiff consistently with law; but, " he added, "I grieve to say we have discovered none." So, in *Monongahela Navigation Co. v. Coons,* 6 Watts & Serg. 101, where the defendant corpora-

[City Council of Montgomery v. Moddox.]

tion constructed a dam in the Monongahela river under legislative license, which caused back-water for several miles in a tributary of that river, and resulted in great damage to the plaintiff's mill, the court held the injury to be remediless, because no portion of the plaintiff's property had been *taken* by the offending corporation, the damage being merely consequential.

The unjust distinction thus obtained at common law, that one who was injured by the rightful exercise of eminent domain, could not recover damages for such injury, however great, unless some portion of his property was actually *taken.* If the least portion of his property was taken, however, the owner could not only recover compensation for it, but also damages accruing to the remainder of such property. Where no property was "taken," the injury inflicted was held to be consequential damages, and compensation was disallowed, unless the offending corporation or party was made liable by force of its charter, or by some statute.

"This was the mischief," says Chief-Justice Paxson, in *Penn. R. R, Co. v. Marchant,* 119 Penn. St. 541, alluding to the two cases above cited, "this was the mischief which the constitutional convention had before it when section 8 of Article XVI [identical, as we have said, with section 7 of Art. XIV of the Alabama Constitution now in force] was adopted by that body, and it was the evil the people were smarting under when they ratified the work of the convention at the polls. The Constitution, since 1790, had declared that the property of the citizen should not be taken or applied to public use without just compensation. The Constitution of 1874 went further, and declared, not only that it shall not be taken, but also that it shall not be injured or destroyed by corporations in the construction or enlargement of their works, without making compensation," etc., etc. "There is no ambiguity in this language," continues the Pennsylvania court, "we have applied it several times to cases arising under it, without the least difficulty."

Keeping in mind the cardinal rule of construction, which has regard for the old law as it stood at the making of the act, the mischief for which that law did not provide, and the remedy provided to cure this mischief, it becomes the duty of the court so to construe the clause of the Constitution under consideration as to suppress the mischief and advance the remedy. "Municipal and other corporations," says the Constitution, "and individuals, invested with the privilege

of taking private property for public use, shall make just compensation for the property taken, *injured* or destroyed, by the construction or enlargement of the works, highways, or improvements, which compensation shall be paid before such taking, injury, or destruction."—Const., Art. XIV, § 7.

I do not discover precisely this same language in the Constitution of any other State, except those of Alabama and Pennsylvania. An analogous phrase, having in view the correction of the same evil, is found in the constitutions of Illinois, Missouri, Nebraska, Georgia, California, and several other States, and provides that "private property shall not be taken or *damaged* for public use, without just compensation." In Texas, the language is "taken, damaged, or destroyed for, or applied to public use." These constitutions have generally been construed to so far change the common-law rule as to entitle the injured owner to compensation for any damage, whether direct or consequential, done to private property for public use, and this without regard to any physical invasion or spoliation of the property so damaged. Mills on Eminent Domain, 2d Ed., § 204*a*, and cases cited. They are clearly designed as an extension of former provisions for the protection of private property. As observed by Thornton, J., in construing a similar clause in the Constitution of California, "If it was not intended as an additional guaranty to the common and usual one, its insertion was idle and unmeaning."—*Reardon v. San Francisco*, 7 Amer. & Eng. Corp. Cases, 454. The whole purpose in view seems to me to be, that the party benefitted—the public—shall bear the burden of making compensation for any private property taken or damaged for public use. As the improvement is made for the common benefit, it is just that the public should pay for it, and not any particular individual be forced to bear the exclusive expense by the consequential depreciation in the value of his damaged property.—*Harmon v. Omaha*, 17 Neb. 548; 52 Amer. Rep. 420; *Moore v. City of Atlanta*, 70 Ga. 611; *Mayor v. Central R. R. Co. of N. J.*, 40 N. J. Eq. 417; *City of Elgin v. Eaton*, 83 Ill. 535; 25 Amer. Rep. 412.

Under our Constitution, the right of recovery in such cases is limited, of course, to property taken, injured or destroyed in a particular mode: viz., "by the *construction* or *enlargement*" of the works, highways, or improvements of the defendant corporation.

It is generally conceded that provisions of this character

are remedial in nature, giving damages where none before were allowed, and that therefore they should be liberally construed to effect their object.   This was said in *Townsend's Case*, 80 Ala. 489, *supra*, and is the settled doctrine in Pennsylvania.—*Borough of New Brighton v. United Presbyterian Church*, 96 Penn. St. 331.

The Supreme Court of Pennsylvania have held, that the word "injury" (or injured), as used in the Constitution of that State, meant such a legal wrong as would be the subject of an action for damages at common law; or, using the language of Mr. Justice Paxson in a recent case, that the framers of the Constitution "intended to give a remedy for legal wrongs, and not such injuries as were *damnum absque injuria*.   Among the latter class of injuries," he adds, "are those which result from the use and enjoyment of a man's own property in a lawful manner, without negligence, and without malice."—*Penn. R. R. Co. v. Marchant*, 119 Penn. St. 541.   This conclusion has been severely criticized, and to my mind is of questionable correctness; but it is unnecessary for the purposes of this opinion to attempt to refute, or even to discuss it.   The critical examiner of the Pennsylvania decisions can not fail to observe the embarrassment which has resulted from the attempt by that learned court to rescue some cases from the injustice of its logical application.   The latest Pennsylvania case which we find reported, bearing on the construction of the clause under consideration, is *Penn. S. V. R. Co. v. Walsh*, 124 Penn. St. 544, and does not seem to follow the logical result of the definition affixed to the word "injury," as above stated.   There, a railroad had been constructed upon the public street of a town, under authority of law, so near to a church edifice as to render it unfit and unsafe for use as a parsonage, church and school, for which it was and had been used; the frequent running of the trains destroying safe access to the property, and seriously interfering with the conduct of religious services, so as to greatly depreciate the value of the edifice.   The injury was held to be the direct result of the construction, and "to stand upon the same footing as to consequential damages as if it had been an actual taking of a portion of the plaintiff's property."

A case more directly in point, for the purposes of the present decision, is *Borough of New Brighton v. United Presbyterian Church*, 96 Penn. St. 331, where the grade of a street was changed by order of the town authorities, and

the church edifice of an abutting proprietor was injured by a depreciation in value, in the nature of consequential damages, without any actual taking of the plaintiff's property. It was admitted that the plaintiff would have been remediless without the aid of the constitutional provision, and of a statute enacted to carry it into effect. To the argument that the municipality was not liable for damages for grading the street the first time, by reason of the rights incident to the original dedication, Mercur, J., said: "The proprietor dedicated the street to the public use as the grade then existed. The defendant in error so accepted it, and erected a church edifice on the lot abutting thereon. Whether the authorities would change the grade, was a matter of conjecture. A change from the natural grade is a change of grade, just as clearly as if changed from a grade previously made by the authorities. It is presumed to have been made for the public benefit; but, as is found, to the injury of private property." "When the borough accepted it [the street], she took it as it then was, in width, line and grade. This statute giving compensation [in execution of the Constitution] is remedial. It gives damages where before none could be recovered. It should receive a liberal construction to effect its object." A judgment of the trial court was affirmed, holding the borough liable for the depreciated value of the property resulting incidentally from the grading, or construction of the street.

There are many other decisions of the same court on analogous questions, an examination of which will throw light on the subject in hand.—*County of Chester v. Brower*, 117 Penn. St. 647; *Penn. R. R. Co. v. Lippincott*, 116 *Ib.* 472; *Pusey v. City of Allegheny*, 98 *Ib.* 522; *City of Reading v. Althouse*, 93 *Ib.* 400; *Penn. R. R. Co. v. Duncan*, 111 *Ib.* 352.

The authorities, we may add, make a distinction, in some cases, as to the liability of municipalities and other corporations to make compensation for the taking of streets and highways, where the fee of the street or highway is vested in the public, on the one hand, and in the adjoining proprietor on the other. Whether any such distinction can be made, under our present Constitution, where a depreciation in the citizen's property is caused by the construction or enlargement of municipal highways, we need not decide, as the facts of the present case authorize the inference that the plaintiff, Maddox, owned the fee of the street in question to

[City Council of Montgomery v. Maddox.]

the center.—2 Beach on Railways, §§ 810–811; Mills on
Eminent Domain (2d Ed.), §§ 203–204; *Hot Springs R. R.
Co. v. Williamson*, 45 Ark. 429; *Columbus & Western R. R.
Co. v. Witherow*, 82 Ala. 190; *Protzman v. Indianapolis R. R.
Co.*, 68 Amer. Dec. 650; *Penn. R. R. Co. v. Merchant*,
33 Amer. & Eng. R. R. Cases, 116; and note on p. 140.

I have no difficulty, for myself, in reaching the conclusion
that, under the provisions of our present Constitution, if the
contiguous proprietor of a house and lot is injured, in the
sense of being *damaged*, by the grading of the street, in the
mode exhibited by the evidence in this case, and this grading
is done by the authority of the municipality, and by reason
of this improvement the pecuniary value of such property is
diminished, the owner is entitled to be compensated for the
damages he has sustained. This rule has the advantage of
being plain in meaning, and of easy application in practice.
It harmonizes, moreover, in policy with that distinguishing
feature of modern republican constitutions, which has in
view the protection of private rights and personal liberty
against the unjust oppression and encroachments of govern-
mental power. And the measure of damages in such cases
will be the decrease in the actual value of the property, oc-
casioned by the improvement thus made for the public
benefit. Unless this construction be given the Constitution,
it will fail, in my opinion, to afford that just indemnity for
the wrongs of the citizen which was intended to be accom-
plished by its framers—which was, I repeat, to require the
public to bear the burden of municipal improvements of this
nature, made for the public benefit, and not to crush the private
citizen by imposing upon him alone the entire damage which
may have been caused to his property. Such an improve-
ment seems to me to be "a construction or enlargement" of
a highway, within the meaning of the clause under con-
sideration. And I do not see that any dedication of a street,
however long ago it may have been, could operate to with-
draw the case from the operation of the law, in force at the
time the improvement is made, which declares, in effect, that
the municipality shall indemnify the citizen for any injury
or damage to his property resulting from such improvement,
equally with any injury or damage done him by the actual
taking of such property. It can make no difference in the
justice of the case, if one's property is reduced to one half of
its original value by an actual taking, or by indirectly cover-
ing up his premises with earth piled up at his door steps in

[City Council of Montgomery v. Maddox.]

leveling a street, or in digging down his sidewalk so as to render a ladder necessary for access to the place of his abode, or his business.

In my opinion, if the uncontroverted evidence in the present case was believed by the jury, the plaintiff was entitled to a recovery. No question seems to be raised as to the amount of the verdict, the rule in *Townsend's Case*, 80 Ala. 489, *supra*, no doubt being followed in the charge of the court, which would put the measure of plaintiff's damages at the difference in the market value of the premises before and after the side-walk was cut down.—*The Indiana, &c. Railway Co. v. Eberle*, 110 Ind. 542; Lead. Cases Amer. Law Real Prop. (Sharswood & Budd), 470–473.

Under these views, the record shows no ruling of the court prejudicial to the appellant, and the judgment must be affirmed.

McCLELLAN, J.—It seems to me there is no escape from the conclusion reached in the opinion of Justice SOMERVILLE, that the rule prescribed by the Constitution imposes a liability in all cases for damages resulting *either* from the taking, the injury, or the destruction of property, in the construction or enlargement of the works, highways or improvements of municipal, or other corporations, having the power to take private property for public use. I find no warrant in the constitutional provision, or in any canon of construction as applied thereto, in connection with pre-existing doctrines of the common law, for limiting the right to compensation for such injuries by a consideration of a supposed reservation of power to take, injure or destroy, in the original dedication of streets to the public use. I fully concur in the foregoing opinion.

CLOPTON, J.—I concur in the affirmance of the judgment, on the principles declared in *Townsend's Case*, 80 Ala. 489, but not in the modification of the rule laid down in that case.

STONE, C. J.—I concur with Judge CLOPTON.