# The Illinois Central Railroad Company

*v.*

## Cecil N. Bentley *et al.*

1. Highways—*equity jurisdiction.* The Illinois Central Railroad Company, being empowered in its charter to change highways intersected by its road so as to afford a more convenient crossing, or to carry such highway either under or over its track, as might be found most expedient, it was held that the option to change highway crossings was vested in the company, to be exercised by it, and that the exercise of such option could not be controlled by a court of equity when there was no pretense that the company, in the execution of the power, had failed to exercise the proper care, skill and precaution.

2. Where a highway had been changed under competent legal authority, there being no charge of the want of proper care, skill and precaution in the exercise of the power, a court of equity has no jurisdiction to order the same to be restored to its former location, on the ground that it is a private nuisance to certain parties residing near the line of road so changed. And it would seem that if it were a public nuisance, the court would have no such jurisdiction, as the remedy at law for changing highways is adequate and complete.

Appeal from the Circuit Court of Stephenson county; the Hon. William Brown, Judge, presiding.

Mr. J. M. Bailey, and Mr. J. I. Neff, for the appellant.

Mr. J. A. Crain, for the appellees.

Mr. Justice McAllister delivered the opinion of the Court:

This was a suit in equity, brought by appellees, in the Stephenson circuit court, against appellant, the substantive

ground of which, as appears by the bill, is, that about October, 1852, defendant, in constructing its railroad through the town of Harlem, in said county, created, and ever since has maintained, a nuisance in a public highway, which originally ran upon a section line, by assuming to change such line, and, instead of making a crossing at the point where the highway intersected the company's track, the appellant made a sharp curve in the highway, carrying it westward to a point about ten rods west of said original line, and there made a crossing, then taking the highway back eastward, upon the other side, to connect with the original line.

It is alleged that both these new lines of the highway are only about forty feet from the railroad track; that they run nearly parallel with it; are made upon a narrow strip of land belonging to the company, and fenced in; that from their proximity to the track, narrowness, etc., they are dangerous to persons and property, and that the usefulness of the highway is thereby greatly impaired.

The bill is exhibited by appellees in their individual capacities, though it is alleged in the stating part that they were commissioners of highways of the town of Harlem.

The nuisance described, being in a public highway, is a common nuisance. The only right shown by the bill for its maintenance by complainants, is, that they severally own lands adjoining the highway and near to the crossing, which lands are so situate, with respect to the crossing, that they are respectively compelled to frequently use the crossing, one for the purpose of hauling wood, the other in going to and from market.

The appellant, by its answer, denied most of the material allegations of the bill, and insisted upon the want of jurisdiction in equity, for the reason that there was an adequate remedy at law; justified the change in the highway by authority given in its charter, and set up *laches* and acquiescence for upwards of eighteen years.

Issue having been taken upon the answer, the cause was heard upon pleadings and proofs. The court found that the crossing should have been made upon the original line of the highway ; that, as made, it was dangerous to persons and property ; that complainants were commissioners of highways of the town of Harlem, reside therein, and upon said highway; that they own land on or near the same, and are compelled to use and travel on said highway over and across said railroad in the necessary transaction of their business; and the court decreed that the highway and crossing should be restored to the original line of the highway; that defendant should, within one year, erect and complete a good and sufficient bridge, with proper approaches, over and across its track on the original line of the highway ; such bridge to be of ample dimensions for the accommodation of all persons, etc., and in case of neglect or failure to construct and complete the bridge, etc., in the manner and within the time prescribed by the decree, then defendants be enjoined from running locomotives, etc., across said highway.

The defendant brings the case here by appeal, and urges various points against the correctness of the decree.

By section 10 of appellant's charter (Private L. 1851, p. 64,) it is declared that the corporation might construct their said road and branches over or across any stream of water, water course, road, highway, railroad or canal, which the route of its road should intersect, but the corporation should restore the stream or water course, road or highway thus intersected to its former state, or in a sufficient manner not to have impaired its usefulness.

If the section had stopped here, the position of appellees' counsel would be one of less difficulty; but it proceeds: " Whenever the track of said railroad shall cross a road or highway, such road or highway may be carried under or over said track, as may be found most expedient; and in case where an embankment or cutting shall make a change in the line of such road or highway desirable, with a view to a more easy

ascent or descent, the said company may take such additional lands for the construction of such roads or highways as may be deemed requisite by said corporation, unless the lands so taken shall be purchased or voluntarily given for the purpose aforesaid.  *  *  The same, when so taken and compensation made, *to become a part of such intersecting road or highway, in such manner and by such tenure as the adjacent parts of the same highway may be held for highway purposes.*"

In order to a proper test of the correctness of the decree appealed from, it will be necessary to consider the nature and effect of appellant's charter, the powers conferred and duties imposed in respect to the matter in question. Its general nature was defined by this court in *Neustadt* v. *Illinois Central Railroad Company,* 31 Ill. 484, where the court said : " The act to incorporate the Illinois Central Railroad Company, of which the above section is part, is a contract between the State and the company, which can not be changed or annulled without the consent of both contracting parties."

The question in that case involved the power of the legislature to change or annul certain provisions of the charter; and the power was denied. This is as far as that case went. What, then, are its nature and effect, as respects the corporators and the public?

In *Dartmouth College* v. *Woodward,* 4 Wheat. 518, Chief Justice Marshall said: " A charter may be granted upon an executory as well as an executed or present consideration. When it is granted to persons who have not made application for it, until their acceptance thereof, the grant is yet *in fieri.* Upon acceptance, there is an implied contract on the part of the grantees, in consideration of the charter, that *they will perform the duties and exercise the authorities conferred by it.*"

But the particular nature of such charters, and the relations between the corporators, the public, and individuals, are more clearly and accurately defined by Lord Eldon, in *Blackmore* v. *Glamorganshire Canal Nav.* 1 Myl. & K. 162. He said: " When I look upon these acts of parliament, I regard them

all in the light of contracts made by the legislature on behalf of every person interested in any thing to be done under them; and I have no hesitation in asserting that, unless that principle is applied in construing statutes of this description, they become instruments of greater oppression than anything in the whole system of administration under our constitution. Such acts of parliament have now become extremely numerous, and from their number and operation, they so much affect individuals that I apprehend those who come for them to parliament do, in effect, undertake that they shall do and submit to whatever the legislature empowers and compels them to do; and that they shall do nothing else; that they shall do and forbear all that they are required to do and forbear, as well with reference to the interests of the public as with reference to the interests of individuals." *Proprietors of Stonebridge Canal* v. *Whely*, 2 Barn. & Adol. 793.

Now, giving these principles, as we are inclined to, a full recognition, and how does the case stand?

The bill in this case does not go upon the provisions of appellant's charter. It does not go upon the theory that the corporation was empowered to make the change in the highway, but in doing so, failed to exercise the proper care, skill, and precaution, but upon the ground of an unlawful assumption, on the part of the company, to change the line of the highway as then established and used, by making a diversion which the company had no authority to make, thereby creating a nuisance in the highway, from which the complainants sustained special damage, wherefore they pray a restoration of the highway to the original line thereof.

This theory is pursued by the decree, which, however, fails to find the special damage requisite to enable private parties to maintain a bill in equity to abate a public nuisance, but seeks to aid a defective finding in that respect, by adding that complainants were commissioners of highways of the town wherein the nuisance was, and requires the corporation virtually to discontinue the part of the highway it had laid out,

and restore the same to the original line, and where such line intersects the railway, to carry the highway over the latter by means of a bridge to be constructed and completed in a certain way, within one year, or in default thereof, the corporation be enjoined from running locomotives and cars across such highway.

This decree seems to us to be subject to certain obvious and fatal objections. It overrides and disregards the plain provisions of appellant's charter, and seems to be an assumption by a court of equity of power to alter and discontinue a portion of a public highway laid out under authority of law, when such power is conferred by statute upon the commissioners of highways alone, to be exercised only in a specified manner.

The section of the charter above quoted clearly conferred upon appellant the authority to change the line of the highway.

With certain limitations, which it is not necessary now to specify, the highways of the State are subject to legislative control. We perceive no constitutional objection to the provision taking the control temporarily from the local municipal authority, and conferring it upon this corporation. The power to make the change was both valid and adequate, and the change was made under it. If, in the execution of the power, the corporation had failed to exercise the proper skill, care and precaution, it would undoubtedly be amenable to the law. But no such element enters into this case. We can not but regard the change in the line of the highway made by appellant as legal; that is, the parts constituting the alterations are to be regarded as parts of the lawful highway, subject, of course, to discontinuance and restoration to the original line by the commissioners of highways, under the power given them by statute, upon petition to alter and discontinue the highways of their town. But that power can not be executed by a court of equity, especially under the circumstances

shown here. Nor has the corporation any authority in the premises. When once exercised, its power was gone.

It is apparent that there was an adequate remedy at law, by proceeding under the several statutes relating to highways and railroad crossings. But the decree not only requires the corporation to discontinue the altered parts of the highway, made under the authority hereinbefore adverted to, and restore the discontinued part·of the old line, but to carry the highway upon the old line, *over* the railway, by means of a bridge.

The section of the charter above quoted provides that, "Whenever the track of said railroad shall cross a road or highway, such road or highway may be carried *under* or *over* said track, as may be found most expedient."

An option is here clearly given to the corporation, which may depend wholly upon a question of engineering, and it is to be determined by the company. The courts have power to put the corporation in motion, but not to determine the option. *Regina* v. *The Southeastern Railw.* 6 Eng. L. & Eq. 214; 1 Redf. on Railw. 398, sec. 6.

But by this decree the court has determined the option without giving the corporation the opportunity of doing so for itself.

The decree will be reversed and the cause remanded for further proceedings not inconsistent with this opinion.

*Decree reversed.*