The Illinois Central Railroad Company

*v.*

The City of Chicago.

*Filed at Ottawa May 12, 1892.*

1. Eminent domain—*whether the power may be exercised is a question for the legislature.* Whether the power of eminent domain shall be put in motion for any particular purpose, and whether the exigencies of the occasion and the public welfare require or justify its exercise, are questions which rest entirely with the legislature. When the use is public, the necessity or expediency of appropriating any particular property is not a subject of judicial cognizance.

2. Same—*enjoining the exercise of the power—jurisdiction of a court of equity.* A court of equity will not interfere to enjoin a proceeding by a city to condemn a part of the right of way of a railway company for the extension of streets across the same, on the ground that the passage of its trains over the proposed crossings will be so frequent and the amount of public travel upon the streets will be so great as to subject the company to great inconvenience and hindrance in the operation of its road. A court of equity has no jurisdiction to enjoin unless there is an abuse of the power conferred by law, or an attempt is made to take and appropriate the property without authority of law.

3. The taking and appropriating of property for a public street by a city or village is for a public use in its nature, and can not be questioned or denied unless the power or discretion is manifestly abused to the oppression of the citizen, and when the use is public the judiciary can not inquire into the necessity or propriety of exercising the right of eminent domain. That right is political in its nature—not judicial.

4. SAME—*condemnation of railroad right of way for a street—rights acquired.* In a proceeding by a city against a railway company to condemn a part of its track for the extension of a public street over or across such track, a judgment of condemnation, no matter in what language couched, will not take the land itself, or the exclusive use thereof, but the city will acquire only a joint right with the railway company to the use of the land condemned. The use by the public will be, as a matter of fact, subject and subordinate.

5. A judgment of condemnation, in such case, can only clothe the city with an easement or right to pass over the tracks. It can not vest the city with the fee of the land or with the exclusive use thereof, because the statute enters into and forms a part of the judgment, and limits and qualifies the nature of the condemnation therein ordered. Neither the city nor the railway company will have the right of occupancy and user to the exclusion of the other, but each subordinate to the right of the other for the separate use contemplated.

6. SAME—*condemnation proceedings — power of court to declare the nature of the interest vested.* While, however, the statute itself will limit the condemnation judgment, in the manner above indicated, as to the extent of the right conferred by it, yet the court rendering such judgment has the power to specifically state therein the nature of the interest thereby vested in the city.

7. SAME—*par. 89, sec. 1, art. 5, chap. 24, of the Revised Statutes—powers conferred on cities and villages.* By paragraph 89 of section 1, article 5, of the act of 1872, to provide for the incorporation of cities and villages, they are expressly empowered to extend public streets over railroad rights of way within their corporate limits.

8. SAME—*extending street over a collection of tracks.* Where ground of a railroad company called a yard is nothing more than a collection of tracks, a street may be extended over or across the same, under paragraph 89 of section 1, article 5, chapter 24, of the statutes.

9. SAME—*extending street at grade.* The meaning of paragraph 89 of section 1, article 5, chapter 24, of the Revised Statutes, is broad enough to not only confer power upon cities to make a street crossing over railroad rights of way at the same level or grade with the railroad tracks, but also to confer the power of extending streets above and over the track or right of way by means of a viaduct or bridge. The word "across," in such paragraph, was intended to designate a crossing at grade.

10. SAME—*extending street over railway—restoring right of way.* The last clause of paragraph 89 of section 1, article 5, chapter 24, relating to extending streets across railroads, means that such track, right of way or land shall be restored so as not to impair its usefulness more than is necessary, in view of its use for the purposes of a street, subject to its

use by the railroad. It is not expected that the crossing can be so restored as to obviate all danger and delay or inconvenience. It is only necessary that there shall be no unreasonable impairment of the usefulness of the railroad right of way.

11. If any obligation rests upon a city extending a street over a railroad right of way and tracks, when no compensation is made to the railway company, to "restore such railroad track, right of way or land to its former state, or in a sufficient manner not to have impaired its usefulness," since the passage of the act of 1874, requiring such companies to construct railroad crossings of highways and streets, such obligation will not be violated because a city may choose to extend a street at grade, rather than by means of a viaduct.

12. SAME—*extending street over, at grade—discretion of city.* An incorporated city being invested by the statute with the power to extend its streets either *over* or *across* the tracks of railroads,—either above the tracks, by means of viaducts, or on the same grade or level with the tracks,—it has a discretion which mode to adopt, which can not be controlled or interfered with by the courts.

13. Railway companies hold their rights of way subject to the right of the public to extend the public highways and streets across such rights of way.

APPEAL from the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

Mr. JAMES FENTRESS, for the appellant:

The city should be restrained from taking the land itself, or the exclusive use, as by her ordinance she seeks to do. *Railway Co.* v. *Railroad Comrs.* 116 Mass. 561; *Railway Co.'s Appeal,* 128 Am. and Eng. Ry. Cases, 266; 122 Pa. St. 511; *In re City of Buffalo,* 68 N. Y. 167; *Railroad Co.'s Appeal,* 93 Pa. St. 150; 3 Am. and Eng. Ry. Cases, 507; Wood on Railroad Law, 664, 690, 699, *et seq.*, note; *Railroad Co.* v. *Faribault,* 23 Minn. 167; *Depot Co.* v. *St. Paul,* 30 id. 361.

The city should be restrained from extending the street across the railroad yard. *Railroad Co.* v. *Brownell,* 24 N. Y. 345; *Railroad Co.* v. *Greenbush,* 52 id. 510; *Railroad Co.* v. *Archer,* 6 Paige, 83; *Clark* v. *Phelps,* 4 Cow. 190; *Railroad Co.* v. *Williamson,* 91 N. Y. 552; *Railway Co.* v. *Trustees,* 43 Ill. 303.

The city should be restrained, in the taking, by condemnation and the mode of constructing her streets, from destroying or unnecessarily impairing the usefulness of the railroad. *State* v. *Railroad Co.* 35 Minn. 131; *State* v. *Railroad Co.* 39 id. 219; *Railway Co.* v. *Baltimore,* 46 Md. 425; *Oshkosh* v. *Railroad Co.* 39 Am. and Eng. Ry. Cases, 681; *Railroad Co.* v. *Railroad Co.* 35 id. 263; *Railroad Co.* v. *Dyer Co.* 38 id. 679; *Railroad Co.* v. *State,* 32 id. 196; *Railroad Co.* v. *Comrs.* 31 Ohio St. 358; *Cook* v. *Railroad Co.* 133 Mass. 185; *People* v. *Railroad Co.* 67 Ill. 118; *Railroad Co.* v. *Moffitt,* 75 id. 524; Wood on Railroad Law, 969, *et seq.,* note; 975, *et seq.,* note.

The term "usefulness" relates to the future as well as the present. *Railroad Co.* v. *Bloomington,* 76 Ill. 447; *Railroad Co.* v. *Moffitt,* 75 id. 524; Mills on Eminent Domain, 198; Wood on Railroad Law, 968; *Cook* v. *Railroad Co.* 133 Mass. 185; *Railroad Co.* v. *Comrs.* 31 Ohio St. 358; *Railroad Co.* v. *Dyer Co.* 38 Am. and Eng. Ry. Cases, 679; *Railroad Co.* v. *State,* 32 id. 196.

The law can not, in cases enjoined, put nor enforce any conditions upon the taking, the use or the mode of constructing the proposed intersection. *Railway Co.* v. *Melville,* 66 Ill. 329; *Railway Co.* v. *Alling,* 99 U. S. 482.

It does not matter whether the irreparable injury done or about to be done is by an individual, or municipality, or a private corporation. Neither is the chancery jurisdiction as to inadequate remedy at law affected by the question of whether it is a city or railroad company, or other corporation, or an individual, that is or is about to injure another or impair his or its rights. *Morris* v. *Thomas,* 17 Ill. 112; *Oard* v. *Oard,* 59 id. 46; *Frazier* v. *Miller,* 16 id. 48; *Morrison* v. *King,* 62 id. 30; *Watson* v. *Sutherland,* 5 Wall. 74; *Clowes* v. *Potteries Co.* L. R. 8 Ch. App. 125; *Wilts* v. *Water Works Co.* L. R. 9 Ch. App. 451.

If there are two modes in which the work can be done, one of which would create a nuisance and the other not, they are

bound to choose the method which will avoid the nuisance. Wood on Law of Nuisances, secs. 761-764, 301; Wood on Railroad Law, 975.

When the company can exercise its right in a way that will not be productive of injury to private rights, it is bound to so exercise it, and a court of equity will always interfere to prevent their exercise in a careless or vexatious manner, (Wood on Nuisances, 855, and authorities cited,) and "to protect special franchises conferred by the legislature." Ibid. secs. 813, 814.

Ordinances of a municipal corporation must be "reasonable," must not be "oppressive," and must not be inconsistent with the public legislative policy. Dillon on Mun. Corp. secs. 319-329.

Mr. C. V. Gwin, also for the appellant:

The power conferred on the city of Chicago under the provisions of paragraph 89, article 5, of the Revised Statutes of 1889, by condemnation or otherwise, to "extend any street * * * over or across * * * any railroad track, right of way or land of any railroad company," did not authorize and empower the city to take the franchise or property of the Illinois Central Railroad Company. Under such grant of power only a limited easement and mere right of crossing over or across the lands owned and used by the company for its business could be acquired. *Railway Co.* v. *Railroad Comrs.* 118 Mass. 561; *Railway Co.'s Appeal*, 28 Am. and Eng. Ry. Cases, 266; 122 Pa. St. 511; *In re City of Buffalo*, 68 N. Y. 167; *Railroad Co.'s Appeal*, 93 Pa. St. 150; 3 Am. and Eng. Ry. Cases, 507; Wood on Railroad Law, 664, 690, 699, *et seq.* and note; *Railroad Co.* v. *Faribault*, 23 Minn. 167; *Depot Co.* v. *St. Paul*, 30 id. 361.

The statute is to be strictly construed. *Railroad Co.* v. *Wiltse*, 116 Ill. 449; *Zinc Co.* v. *Canal Co.* 36 Am. and Eng. Ry. Cases, 515; *Railroad Co.* v. *Reich*, 101 Ill. 157.

Municipal corporations, in the exercise of the power of eminent domain, stand upon no higher or different plane than other legislative grantees of such power.   *Water Works* v. *Bartlett,* 16 Fed. Rep. 615 ; *Stack* v. *East St. Louis,* 85 Ill. 377 ; *Nevins* v. *Peoria,* 41 id. 502 ; *Bloomington* v. *Brokaw,* 77 id. 194; *Elgin* v. *Kimball,* 90 id. 356 ; *Babcock* v. *Buffalo,* 56 N. Y. 268 ; *Morse* v. *Worcester,* 139 Mass. 389 ; *Cotes* v. *Davenport,* 9 Iowa, 227 ; *Seifert* v. *Brooklyn,* 101 N. Y. 136.

The city, in extending its streets, must not unnecessarily impair the usefulness of the Illinois Central Railroad Company in the performance of its duties to the public as a common carrier of freight and passengers.   *State* v. *Railroad Co.* 35 Minn. 131 ; *State* v. *Railroad Co.* 39 id. 219 ; *Railroad Co.* v. *Railroad Co.* 39 Am. and Eng. Ry. Cases, 6 ; *Oshkosh* v. *Railroad Co.* id. 681; *Railroad Co.* v. *Railroad Co.* 35 id. 263 ; *Railroad Co.* v. *Dyer Co.* 38 id. 679 ; *Railroad Co.* v. *State,* 32 id. 196 ; *Railroad Co.* v. *Comrs.* 31 Ohio St. 358 ; *Cook* v. *Railroad Co.* 133 Mass. 185 ; *People* v. *Railroad Co.* 67 Ill. 118 ; *Railroad Co.* v. *Moffitt,* 75 id. 524 ; Sutherland on Statutes, sec. 388 ; Pierce on Railroads, 154-595.

The words, "but when no compensation is made to such railroad company," in paragraph 89, have reference and relate alone to compensation for the purpose of enabling the railroad company to carry the streets across its tracks in such manner as not to impair the usefulness of such railroad, and thus transfer the common law and statutory duty of the city upon the company.   That is to say, if a viaduct is necessary to prevent impairment of the usefulness of the railroad, the city must build it, and can only relieve itself from the duty by paying to the railroad company a sum sufficient to enable it to build a viaduct, so that the usefulness of such railroad shall not be impaired.   The term "usefulness" relates to the future as well as to the present.   *Railroad Co.* v. *Bloomington,* 76 Ill. 447 ; *Railroad Co.* v. *Moffitt,* 75 id. 524 ; Mills on Eminent Domain, 198 ; Wood on Railroad Law, 968, *et seq.,* and

note; *Cook* v. *Railroad Co.* 133 Mass. 185; *Railroad Co.* v. *Comrs.* 31 Ohio St. 358; *Railroad Co.* v. *Dyer Co.* 38 Am. and Eng. Ry. Cases, 679; *Railway Co.* v. *State*, 32 id. 196.

Mr. John S. Miller, and Mr. Arthur H. Chetlain, for the appellee:

Every railroad company takes its right of way subject to the right of the public to extend the public highways and streets across such right of way. *Railroad Co.* v. *Railway Co.* 30 Ohio St. 604; *Railroad Co.* v. *Railway Co.* 105 Ill. 388.

Railroad companies are subject to governmental control. *Cherokee Nation* v. *Railway Co.* 135 U. S. 641.

Taking for a public street is a public use, and the courts can not inquire into the expediency of the exercise of the power.    Cooley's Const. Lim. 537; *Railroad Co.* v. *Lake*, 71 Ill. 333; *Shaw* v. *Williams*, 2 Mich. 437; *Dunham* v. *Hyde Park*, 75 Ill. 371; Lewis on Eminent Domain, secs. 237, 238; *Boone Co.* v. *Patterson*, 98 U. S. 403; *Sheridan* v. *Colvin*, 78 Ill. 246; *Railway Co.* v. *Railway Co.* 97 id. 506.

Appellant overlooks the governmental power over railroads as public highways and public agencies, (*Cherokee Nation* v. *Railway Co.* 135 U. S. 641,) and overlook the police power. *Railway Co.* v. *Chicago, supra; Fertilizing Co.* v. *Hyde Park*, 97 U. S. 659; *Railroad Co.* v. *Loomis*, 13 Ill. 548; *Railroad Co.* v. *McClelland*, 25 id. 140; *Railroad Co.* v. *Willenborg*, 117 id. 203; *Banking Co.* v. *Smith*, 128 U. S. 180.

Mr. Chief Justice Magruder delivered the opinion of the Court:

These are three bills in chancery filed by the appellant company against the appellee in the Circuit Court of Cook County; and, as the cases involve the same questions and have been submitted upon the same abstracts and briefs, they have been taken and considered as one cause.    The object of the bills is to enjoin the city of Chicago from extending certain

streets across the right of way of the Illinois Central Railroad Company. The first bill alleges, that, on September 22, 1890, the City passed an ordinance for opening 56th street across such right of way, and thereafter filed its petition in the said Circuit Court for the condemnation of the land necessary for such improvement; that, on September 15, 1890, the City passed an ordinance for the opening of 79th street across said right of way, and thereafter filed its petition to condemn in the same court; that, on January 19, 1891, the City passed an ordinance for opening 60th street across said right of way, but no proceeding for condemnation in pursuance of this ordinance appears to have been begun at the time of the filing of the bill on February 28, 1891.

The second bill, filed on June 15, 1891, alleges that, on March 16, 1891, the City passed an ordinance for opening 72d street across said right of way, and thereafter filed its petition for condemnation in said court.

The third bill, filed on July 21, 1891, alleges that, on March 30, 1891, the City passed an ordinance for opening 82d street between Dobson Avenue and Stony Island Avenue, by condemning therefor that part of appellant's right of way lying between the north and south lines of said street both produced eastwardly across said railroad, and thereafter filed its petition for condemnation in the Superior Court of said County; that, on June 2, 1891, the city passed an ordinance for opening and widening 90th street from Manistee Avenue to the west line of appellant's right of way by condemning therefor certain specified parts of appellant's right of way; that the land, over which it is so proposed to extend 82d and 90th streets, is "railroad yard" land; that eight tracks have been laid in that part of the "yard" where 90th street will cross, and two tracks are in course of construction in that part where 82d street will cross; that the City thereafter filed its petition in said Superior Court to condemn the land necessary for so opening and widening 90th street.

38—141 Ill.

The bills pray for injunctions against the opening, or extension, of these streets across the railroad tracks, or right of way, at grade, or otherwise than by viaducts over, or subways under such right of way, or tracks. The bills charge, and the answers of the city thereto deny, that the extension of the streets, as ordered in said ordinances, will be an irreparable injury to the railroad company, and will obstruct the use of its tracks as now located, and materially and unnecessarily impair its franchises. Both sides introduced testimony, and after hearing had, the court below dissolved the injunctions, and dismissed the bills. From such decrees of dismissal the present appeals are prosecuted.

The material questions here involved have been settled by the recent decisions, made by this Court in the cases of *Illinois Central R. R. Co.* v. *City of Chicago*, 138 Ill. 453, and *Chicago & N. W. Ry. Co.* v. *City of Chicago*, 140 id. 309. In view, however, of the great ability and ingenuity, with which counsel have again pressed these questions upon our attention, we will re-state our views.

The appellant company, like every other railroad company, holds its right of way subject to the right of the public to extend the public highways and streets across such right of way. (*C. & N. W. Ry. Co.* v. *City of Chicago, supra.*)

The constitution of the State provides, that "the exercise of the power and the right of eminent domain shall never be so construed, or abridged, as to prevent the taking by the General Assembly of the property and franchises of incorporated companies already organized, and subjecting them to the public necessity, the same as of individuals." (Cons. of 1870, Art. 11, sec. 14.)

By the Act of 1872 to provide for the incorporation of cities and villages, the General Assembly conferred upon the city council in cities the power "to lay out, establish, open, alter, widen, extend, grade, pave or otherwise improve streets, alleys, avenues, sidewalks, wharves, parks, and public grounds, and

vacate the same." (Rev. Stat. chap. 24, art. 5, sec. 1, paragraph 7.) If the legislature had granted to cities no other power in regard to the extension of streets across existing railroads than the general power conferred by paragraph 7, here quoted, it might be necessary to consider and discuss a number of authorities, to which counsel for appellant have referred in their briefs. These authorities hold, that the land included in the right of way of an existing railroad is already devoted to a public use by express legislative grant; that the extension of a street across it is such an appropriation of it to another public use as is not authorized by a general power to open or extend streets; that, in such case, the authority must be created, or the legislative intent must be made to appear, by express words, or by necessary implication. But the General Assembly has conferred upon the cities in this State the power to extend streets over railroad rights of way by express legislative authority. That authority is given by paragraph 89 of section 1 of article 5 of said Act of April 10, 1872, in the following words: "The city council shall have power, by condemnation or otherwise, to extend any street, alley or highway over or across, or to construct any sewer under or through, any railroad track, right of way, or land of any railroad company (within the corporate limits); but where no compensation is made to such railroad company, the city shall restore such railroad track, right of way or land to its former state, or in a sufficient manner not to have impaired its usefulness."

Counsel say that the judgments to be rendered in the condemnation proceedings will take the land itself, or the exclusive use thereof. Such cannot be the effect of the judgments. We held in *Ill. Cen. R. R. Co.* v. *City of Chicago, supra,* that the tract to be condemned, under the provisions of paragraph 89, "for the extension of the street over and across railroads, railroad rights of way and lands" was intended by the legislature to be "subject to the joint use by the railroad in the

exercise of its franchise, and by the public as a street." The ordinances, in providing for an extension of the streets across the right of way and for the condemnation of railroad property for the purposes of a street, provide only for the acquirement of an easement by the public over the railroad land, and not for any ownership in the fee thereof. The petitions in the condemnation proceedings ask only, that land may be condemned for the improvements specified in the ordinances, and the improvements so specified are mere easements to be acquired for the purpose of crossing, or passing over, the tracks, or rights of way. No judgments have yet been entered in the condemnation proceedings sought to be enjoined, but such judgments when entered, in whatever language they may be couched, can only clothe the city with an easement, or right to pass over the tracks. They cannot vest the city with the fee of the land, or with the exclusive use thereof, because the statute enters into and forms a part of the judgment, and limits and qualifies the nature of the condemnation therein ordered. As paragraph 89 authorizes nothing more than an easement to be acquired by the condemnation proceeding, it follows that the judgment therein "would necessarily only have vested the city with the right of use and occupancy of the land condemned subject to the rightful use of the railroad company thereof. Neither will have the right of occupancy to the exclusion of the other, but each subordinate to the right of the other for the separate use contemplated; the one occupying and in control thereof for all the legitimate purposes of a public street, and the other for the reasonable and proper exercise of its franchise." While, however, the statute itself will limit the condemnation judgment in the manner here indicated as to the extent of the right conferred by it, yet the court rendering such judgment has the power to specifically state therein the nature of the interest thereby vested in the city. (*Ill. Cen. R. R. Co.* v. *City of Chicago, supra.*)

We have also held in the latter case, that equity will not interpose to enjoin a condemnation proceeding, at any rate for such reasons as are set up in the present bills. Whatever just claims the railroad company may have to compensation can be set up in that proceeding. "We are not aware of any authority that authorizes or gives jurisdiction to courts of equity to proceed by injunction, unless there is an excess or abuse of the power conferred by law, or there is an attempt to take and appropriate the property without authority of law, or in a manner and to an extent not authorized by law." (*Ill. Cen. R. R. Co.* v. *City of Chicago, supra.*)   There is no such abuse, or unlawful attempt, shown by the records in these cases.

The allegations, contained in these bills, amount, in substance, to complaints, that the passage of trains over the proposed crossings will be so frequent, and the amount of public travel upon the streets will be so great, as to subject the appellant company to great inconvenience and hindrance in the operation of its road.   Allegations of similar character were made in the bill in *L. S. & M. S. Ry. Co.* v. *C. & W. I. R. R. Co.* 97 Ill. 506, where the complaining companies filed a bill against the defendant company to enjoin the latter from prosecuting a condemnation proceeding instituted for the purpose of acquiring an easement, or crossing, over the tracks of the former; in the bill in that case, it was stated that complainants' business was constantly increasing, that more than 3500 cars and about 400 engines passed daily over the premises in question, that complainants intended to construct other tracks, that they could not properly transact their business, or do their duty to the public without the use of the whole of said premises, that any interference therewith would cause great and irreparable injury to them and to the interests of the public committed to their charge as carriers, that, if defendant's road should be constructed and operated as proposed, the business would be almost doubled, that such increase would

so hinder and embarrass complainants in transferring freight and running trains as to cause an injury constantly increasing, and not susceptible of compensation by damages in a case at law, and would impair, infringe and destroy the franchises of complainants, and that the construction and operation of defendant's road as proposed would necessarily be a nuisance of a serious and irreparable nature in the delay of business and increased dangers to life; the bill was answered, and, after hearing had, was dismissed for want of equity; we affirmed the decree of the court below, and held that a court of chancery could not relieve against the injuries complained of. The charges made in the present bills are no stronger than those made in the C. & W. I. R. R. Co. case.

It is claimed, that paragraph 89 gives to the city council the option of extending the street either above the railroad tracks by means of a viaduct, or across it at grade, and that a court of chancery will require the council to adopt the former rather than the latter method of crossing, because less inconvenience will thereby be caused to the appellant in the operation of its road. It is admitted by counsel for appellant, that the legislature intended, by the use of the word "across," to provide for a crossing at grade, but it is insisted that the word "over" was intended to designate a crossing above the right of way, track, or land, by means of a viaduct. The two words, "over" and "across" may be used interchangeably and as having the same meaning. Webster thus defines the word, "across": "from side to side; athwart; crosswise; quite over." He defines the word, "over," as follows: "above, or higher than, in place or position, with the idea of covering; across; from side to side of; upon the surface of." The word "over" has been held to denote a crossing upon the surface in *Newburyport Turnp. Corp.* v. *Eastern R. R. Co.* 23 Pick. 326, where the Supreme Court of Massachusetts said: "The words "over" and "under," as applied to the surface, are not precisely opposites. One passes over a road, if he crosses it on the sur-

face, as well as when he crosses above it on a bridge." *(B. & M. R. R. Co.* v. *Mayor, etc. of Lawrence,* 2 Allen, 107.) But the word "over" has also been construed to denote a crossing at a higher level, and not on the same level; and it has been held to mean "not *upon* but *above,* so the railroad should pass under the highway." *(R. R. Co.* v. *Royalton,* 58 Vt. 234; *B. & M. R. R. Co.* v. *Mayor, etc. of Lawrence, supra.)* While, therefore, the word "over," as used in paragraph 89, may be construed as contemplating a crossing of the street at the same level or grade with the railroad track, we are inclined to think that its meaning is broad enough to also confer the power of extending the street above and over the track, or right of way, by means of a viaduct or bridge.

But the word "across" was evidently intended to designate a crossing at grade, or on the same level as the railroad right of way. Consequently, the city council is vested by paragraph 89 with the power to extend the streets, either *over* or *across* the tracks, either above the tracks by means of viaducts, or on the same grade or level with the tracks. The council is thus clothed by the legislature, not only with the power of acquiring an easement by condemnation or otherwise over the railroad tracks or right of way, but also with the discretionary power of deciding as to the mode of crossing, whether above by viaduct, or at grade and upon the same level. In the present cases, the ordinances do not provide for crossings by means of viaducts, but for crossings at grade. The municipal authorities have exercised the option, or discretionary authority conferred upon them by the legislature, and have provided for crossings in one only of the methods indicated in the statute, and have instituted condemnation proceedings in pursuance of the ordinances so passed by them. Their action in this regard is political or legislative in its character, and cannot be controlled by the courts.

Appellant, in these cases, is asking a court of chancery to substitute its judgment for the judgment of the city council

upon a question, which belongs exclusively to the legislative branch of the government. They are asking a court of chancery to require the city council to repeal its ordinances for grade crossings and, in the place thereof, to adopt ordinances for viaduct crossings. Such relief as this cannot be granted under the facts disclosed in these records. While it may be true, that inconveniences and interruptions both to appellant and to the public, may result from street crossings made necessary by the unparalleled growth of the population in the city of Chicago, yet the proof does not disclose, that the ordinances in these cases are unreasonable in their terms, or in the methods provided therein for the extension of the streets.

In *Curry* v. *Mount Sterling*, 15 Ill. 320, we said: "This power of the corporation to extend and open streets applies to all lands within its boundaries, whether the same be laid out into town lots or not. The extension of the street in question was a matter of discretion on the part of the board of trustees (of the town.) The courts cannot review the exercise of that discretion."

In *C. R. I. & P. R. R. Co.* v. *Town of Lake*, 71 Ill. 333, we said: "The taking and appropriating property for a public street or highway by a municipality is a public use in its nature, and cannot be questioned or denied.  *  *  *  When the use is public, the judiciary cannot inquire into the necessity or propriety of exercising the right of eminent domain. That right is political in its nature and not judicial. It belongs exclusively to the legislative branch of the government, and under our constitution the judiciary have nothing to do with it."

The *Curry* case, and the *Town of Lake* case, were re-indorsed and approved in *Dunham* v. *Hyde Park*, 75 Ill. 371.

In *Brush* v. *City of Carbondale*, 78 Ill. 74, it was said: "If the city is incorporated, then the council probably have power to open, grade and repair the streets, and may, for aught we know, have ample discretionary power to do so, as to time,

manner and cost; and if acting under the general incorpora-
tion law, * * * the power is general and confers a large
discretion in its exercise; and that power will not be controlled
by the courts unless there is abuse operating oppressively upon
individuals. * * * Where persons or officers are acting
within well recognized powers, or exercising a discretionary
power, a court of equity will be wholly unwarranted in inter-
fering, unless the power or discretion was being manifestly
abused to the oppression of the citizen."

In *Sheridan* v. *Colvin*, 78 Ill. 237, we said: "The second
question is, what is the nature of the power sought to be ex-
ercised in passing the ordinance under consideration? To
that question there can be but one answer, and we shall not
stop to discuss it. The power is legislative and discretionary.
The third and last question is, had the court of chancery juris-
diction to interfere with the exercise of that power? We are
clearly of the opinion that it had not. The subject is purely
political."

In *L. S. & M. S. Ry. Co.* v. *C. & W. I. R. R. Co. supra*, we
said: "The question, whether it is wise to permit such railroad
company to select its own route and choose the point and
manner of crossing other railroads, was also a political ques-
tion for the General Assembly to determine, and that deter-
mination cannot be reviewed by the courts."

To the same effect are the text books and the decisions in
other States. Dillon, in his work on Municipal Corporations,
(4th ed. vol. 1, sec. 95,) says: "Where by its charter a muni-
cipal corporation is empowered, if it deems the public welfare
or convenience requires it, to open streets or make public im-
provements thereon, its determination whether wise or unwise,
cannot be judicially revised or corrected." In Lewis on Emi-
nent Domain it is said (sec. 238): "Whether the power of
eminent domain shall be put in motion for any particular
purpose, and whether the exigencies of the occasion and the
public welfare require or justify its exercise, are questions

which rest entirely with the legislature. When the use is public, the necessity or expediency of appropriating any particular property is not a subject of judicial cognizance." .(*Boom Co.* v. *Patterson,* 98 U. S. 403; *C. & E. I. R. R. Co.* v. *Wiltse,* 116 Ill. 449; *People* v. *N. Y. C. & H. Riv. R. R. Co.* 74 N. Y. 302; *M. & St. P. Ry. Co.* v. *City of Faribault,* 23 Minn. 167; *Nat. Docks R. R. Co.* v. *Central R. R. Co.* 32 N. J. Eq. 755; *Nat. Docks & N. J. J. C. Ry. Co.* v. *State,* 21 Atl. Rep. 570; *Struthers* v. *Dunkirk, etc. Ry. Co.* 87 Penn. St. 282; *Central R. R. Co. of N. J.* v. *State,* 32 N. J. Eq. 220; 2 Wood's Rl'w'y Law, page 981; Elliott on Roads and Streets, page 598; *I. C. R. R. Co.* v. *Bentley,* 64 Ill. 438; *People* v. *C. & A. R. R. Co.* 67 id. 118; *L. M. & C. & X. R. R. Cos.* v. *City of Dayton,* 23 Ohio St. 510; *Johnston* v. *Prov. and Springfield R. R.* 10 R. I. 365; *People ex rel.* v. *B. & A. R. R. Co.* 70 N. Y. 569.)

We concur in the following views, expressed by the Supreme Court of the State of Ohio in *L. M. & C. & X. R. R. Cos.* v. *City of Dayton, supra:* "The mere fact that the extension of the street, as proposed, will inconvenience the plaintiffs, or subject them to additional expense in transacting their business and operating their road, constitutes no ground for the interference of a court of equity. The same results, to a greater or less extent are produced wherever a railroad is crossed by a public street or highway. These are matters, which it is clearly the duty of the city council to take into consideration in determining the necessity and expediency of the proposed improvement; but so long as their proceedings are regular, and they act from proper motives and within the limits of their authority, the discretion confided to them, in respect to the location and establishment of streets, is not subject to judicial revision."

We have recently held in *Drexel* v. *Town of Lake,* 127 Ill. 54, that it was a question to be determined by the trustees of a town, which one of two modes of carrying off the sewage of a district should be adopted as the best and most expedient

mode, and we there said: "the choice of expedients is within the legislative discretion of the trustees of the town, a discretion with which the courts will not interfere unless clearly abused."

Paragraph 89 was adopted by the legislature in 1872. Afterwards in 1874 the legislature passed an act requiring the railroad companies in this State to construct and maintain railroad crossings of highways and streets. (*Chicago & N. W. Ry. Co.* v. *City of Chicago, supra.*) Considering paragraph 89 without reference to the subsequent act of 1874, we cannot see that the application of the second clause of the paragraph to the facts of this case furnishes any justification for a resort to a court of equity. Such second clause provides, that, "where no compensation is made to said railroad company, the city shall restore such railroad track, right of way or land to its former state, or in a sufficient manner not to have impaired its usefulness." Without deciding the question, whether any obligation does or does not rest upon the city, under the present proceedings, to restore the crossing in a sufficient manner not to impair the usefulness of the tracks, such obligation, if it existed, would not be violated because the city chooses to extend the streets at grade, rather than by means of a viaduct. The language of the second clause is not to be taken literally. It is well understood, that the track or right of way cannot, in the nature of things, be restored to the same state of usefulness with the street thereon, as before. It is to be restored, so as not to impair its usefulness more than is necessary in view of its use for the purposes of a street, subject to the use by the railroad company; it is not to be rendered less useful, except in so far as diminished safety and convenience are inseparable from its use by the public as a street crossing. It is not expected, that the crossing can be so restored as to obviate all danger, or delay, or inconvenience. It is only necessary, that there should be no unreasonable impairment of the usefulness of the railroad right of way. To this effect is the weight of

authority. (2 Wood's R'l'wy Law, sec. 271, pge 975, note 2 and cases; *Com.* v. *Erie, etc. R. R. Co.* 27 Penn. St. 339; *People ex rel.* v. *D. & C. R. R. Co.* 58 N. Y. 152; *Johnston* v. *Providence & Springfield R. R. Co.* 10 R. I. 365; *C., R. I. & P. R. R. Co.* v. *Moffitt,* 75 Ill. 524; *City of Bridgeport* v. *N. Y. & N. H. R. R. Co.* 36 Conn. 255; 2 Wood's Railway Law, sec. 271, page 981, note 1; *People* v. *Boston & Albany R. R. Co.* 70 N. Y. 569; *State* v. *St. P., Minneapolis & Manitoba Ry. Co.* 35 Minn. 131.)

So far as the extension of the streets across 82d and 90th streets is concerned, the language of paragraph 89 is broad enough to authorize the extension across the railroad "yard," as well as across the tracks or right of way. The proof shows, not only that 82d street is one mile from 90th street, but that what is called a "yard" is nothing more than a collection of tracks; and hence the opening of the streets across the land embraced in the yard is authorized by paragraph 89, under the rule laid down in *Pres't, etc. D. & H. C. Co.* v. *Vil. White-hall,* 90 N. Y. 21.

The decree of the Circuit Court dissolving the injunctions and dismissing the bills is affirmed.

*Decree affirmed.*